**AFFILIATED ACCEPTANCE CORPORATION, Respondent,**

v.

**Robert and Bridgett BOGGS, Appellants.**

**No. WD 50415.**

Missouri Court of Appeals, Western District.

March 19, 1996.

---

David J. Weimer, Berman, DeLeve, Kuchan & Chapman, Kansas City, for appellants.

Kenneth W. Morgens, Kansas City, for respondent.

Before BRECKENRIDGE, P.J., FENNER, C.J., and LAURA DENVIR STITH, J.

BRECKENRIDGE, Judge.

Robert and Bridgett Boggs appeal the judgment of the trial court, sitting without a jury, in favor of Affiliated Acceptance Corporation in its suit on promissory notes executed by the Boggs. The judgment of the trial court is reversed and the case is remanded for further proceedings.

Affiliated is a receivables management company that processes monthly installment payments on intangible contracts and advances money on the contracts. The Boggs, who operate a karate school known as Kenukan Academy, hired Affiliated to collect and process the monthly receivables from their students. Affiliated advanced money to the Boggs on the student contracts in exchange for the execution of various loan documents [1] and sixteen promissory notes. The arrangement between Affiliated and the Boggs continued for over four years, until Affiliated sued the Boggs to recover principal, interest, attorney fees and other fees due under the loan agreements and promissory notes.[2]

---

1. A loan agreement, a security agreement, a collection agreement and a guaranty were executed by the Boggs.

2. Paragraph 1.9 of the loan agreement provided that the Boggs were to pay Affiliated "miscellaneous fees" as follows:

In its petition, Affiliated alleged that the Boggs executed the loan documents and promissory notes, and thereafter defaulted in their performance of their obligations under the notes and other agreements. There were no allegations in the petition regarding the principal amount, interest rate or due date of the individual notes. The various loan agreements as well as sixteen promissory notes were attached to the petition as exhibits. In their answer, the Boggs denied the allegations of default and asserted the affirmative defenses of payment, lack of consideration, breach of contract and usury.

The only evidence presented in the case by Affiliated was the testimony of Alan Downey, the CEO–CFO of Affiliated. Mr. Downey described Affiliated's collection and loan arrangement with the Boggs. Mr. Downey explained that the balances of the promissory notes were aggregated into two accounts and that as payments on the student accounts were received, the balance of the Boggs' debt accounts decreased. He testified that an outstanding balance of $12,252.15 existed on the notes. During his testimony, the loan agreement, security agreement, collection agreement and guaranty were introduced into evidence. Only one promissory note, however, was offered into evidence.

Affiliated's Exhibit 15, a compilation of its monthly debt balance summaries, was also admitted into evidence during Mr. Downey's testimony. These summaries revealed the manner in which Affiliated calculated the amount owed by the Boggs. In the summary for each month, the beginning client balance was combined with the processing and exit fees due Affiliated, the loan advances and the advance origination fees, to arrive at the subtotal of amounts due Affiliated. From the total of these amounts, the Boggs were given credit for the net collections for the month, after deducting any late fees, bad check return fees and miscellaneous amounts. The resulting debt balance was then utilized to calculate Affiliated's "interest on debt balance" at the rate of one and one-half percent per month, which was added to obtain the total end of the month debt balance. Of the fifty-six monthly debt balance summaries in Exhibit 15, only ten included an "active account process summary" which listed the individual loan balances with amounts paid or fees charged on each loan during the month.

After hearing the evidence, the trial court awarded Affiliated a judgment against the Boggs for $12,252.15, the full amount Mr. Downey testified was due.

On appeal, the Boggs claim in their first point that the trial court erroneously declared or applied the law in calculating the amount due and owing from the Boggs. Within their eight subpoints, the Boggs argue that the interest assessed by the trial court was not agreed to in writing and was usurious; the interest was improperly compounded; the fees and charges were disguised illegal interest charges; and that under § 408.030.2, RSMo 1994,[3] the Boggs

(1) a loan origination fee of ten percent of the amount advanced to the Boggs, but not less than fifteen dollars;

(2) a collection fee of six percent of each payment made through electronic transfer, fifteen percent of a payment made by credit card, and twelve percent of a payment made in any other manner;

(3) a cancellation or exit fee, in consideration of the lender completing the processing of payments on a particular student contract, which is the greater of twenty dollars or the amount of the collection fee for that particular payment;

(4) a late fee equal to five percent of the particular installment, but not less than one dollar nor more than five dollars;

(5) a fee for processing a non-sufficient funds or stop payment check, a rejected draft, a rejected electronic funds transfer draft or a rejected credit card transfer in the amount of fifteen dollars; and

(6) a one-time programming fee for creating a specific computer program in the amount of $875.00.

The collection agreement further provides for a collection fee of twenty-five percent (25%) for Affiliated's "Second Effort" collection when students making their first payment are more than sixty (60) days late or when students making subsequent payments are more than eighty (80) days late. If the Second Effort cannot produce an acceptable payment within thirty (30) days and Affiliated closes the account and refers it to an appropriate national collection agency, the collection fee increases to fifty percent (50%) of any future student payments.

**3.** All statutory references are to RSMo 1994, unless otherwise indicated.

were entitled to an offset of twice the interest illegally charged. In their point two, the Boggs argue that the judgment of the trial court was not supported by substantial evidence. Within that claim, the Boggs assert that Affiliated failed to make a prima facie case on the promissory notes. They argue that since only one of the notes was offered into evidence, Affiliated failed to prove the loans were in default.

■ In a court-tried case, the judgment of the trial court will be upheld unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). As the Boggs' sufficiency of the evidence claim in point two is dispositive, it will be addressed first.

■ "It is basic law that as between the original parties to a promissory note, the payee may either sue the maker on the note or [the payee] may waive the cause of action on the note and sue in indebitatus assumpsit on the original consideration."[4] *Union Sav. Bank v. Cassing*, 691 S.W.2d 513, 514 (Mo. App.1985). To recover on a promissory note, the plaintiff must (1) produce the note (2) signed by the maker and (3) show the balance due. *First Bank Centre v. Thompson*, 906 S.W.2d 849, 856 (Mo.App.1995). "[P]resentment of the note or satisfactory proof that it has been lost or destroyed are essential elements of the case because the instrument itself is the exclusive ground for the cause of action." *Cassing*, 691 S.W.2d at 514. Absent presentment of the note or proof that it was lost or destroyed, a judgment based on the instrument fails for want of substantial evidence to support it. *Id.* at 514–15.

In *Cassing*, 691 S.W.2d 513, the Western District considered whether presentation of a promissory note by testimony only, without introduction of the note into evidence, was sufficient to make a prima facie case on the note. In *Cassing*, Union Savings Bank sued the makers of a negotiable promissory note

to recover principal, interest and attorney fees claimed to be due. *Id.* at 514. A purported copy of the note was attached to the bank's petition as an exhibit, however, the note was not introduced into evidence. *Id.* The only evidence regarding the note presented at trial was the testimony of the bank's assistant vice-president who identified the exhibit as a note given to the bank by the makers. *Id.*

■ Relying on case law, treatises and the Uniform Commercial Code, §§ 400.3–307(2), RSMo 1978, this court held that the note, or proof that the note cannot be produced, must be introduced into evidence in a suit on the note. *Id.* at 515. It concluded that the bank's failure to offer the note into evidence required the judgment for the bank to be reversed. *Id.* at 514–515. The court found that the deficiency in proof was remediable, however, and the case was remanded to the trial court for further proceedings. It explained, "[W]here a plaintiff has by mistake or inadvertence failed to prove up a claim in a situation where the proof seems to have been available, we have no alternative but to reverse the judgment and remand the case for the reception of additional evidence." *Id.* at 515–16. A plaintiff's verdict should be reversed without remand only if the appellate court is convinced that plaintiff could not make a submissible case on retrial. *Moss v. National Super Markets, Inc.*, 781 S.W.2d 784, 786 (Mo. banc 1989). "The preference is for reversal and remand." *Id.*

■ In the present case, Affiliated sued the Boggs on the sixteen promissory notes, not on the underlying debt. It attached the loan documents and the notes to the petition as exhibits. However, it offered only one note, dated September 3, 1991, into evidence. Its failure to introduce the remaining fifteen notes into evidence requires reversal for failure of proof of the judgment in favor of Affiliated on those notes. However, as in *Cassing*, the record indicates that the evidentiary deficiency which requires reversal is

---

4. *Indebitatus assumpsit* is a form of action of *assumpsit* "in which the declaration alleges a debt or obligation to be due from the defendant, and then avers that, in consideration thereof, [the defendant] promised to pay or discharge the same." Black's Law Dictionary, 768 (6th ed.1990).

curable on remand. The case, therefore, must be remanded to the trial court for retrial, where the remaining promissory notes may be received in evidence.

■ With regard to the one note entered into evidence as Plaintiff's Exhibit 14, Affiliated met the first and second requirements of a prima facie case under *First Bank Centre*, 906 S.W.2d at 856, in that Affiliated produced the note admittedly signed by the maker. Affiliated failed to prove the third element of *First Bank Centre, id.*, the balance due on the note. The note, dated September 3, 1991, provided for an advance to the Boggs of $640.44 plus an origination fee of $64.04, for a total principal balance of $704.48. The note matured and became due and payable on August 3, 1992. Mr. Downey testified that the aggregate debt balance outstanding included the loan evidenced by the September 3, 1991 note.

■ This evidence sufficiently established that an outstanding balance existed on the September 3, 1991 note over two years after it became due and payable, and that the note was in default. The evidence did not prove the specific balance due on the September 3, 1991 note, however, because the Boggs' note balances were aggregated into two accounts. The total original principal amount of the sixteen promissory notes was $12,259.79, being the amount advanced to the Boggs plus the origination fees. After acknowledging payments of $11,976.67 from the Boggs' students, Mr. Downey testified that the debt balance sheets of the two accounts showed a balance due and owing of $12,252.15.[5] This was not sufficient evidence from which the finder of fact could calculate the sum due on the September 3, 1991 note. "Generally, damages need not be established with absolute certainty, but reasonable certainty is required as to both existence and amount, and the evidence must not leave the matter to speculation." *First Bank Centre*, 906 S.W.2d at 855. The judgment on the September 3, 1991 note, therefore, must also be reversed and remanded for retrial where Affiliated will have the opportunity to produce additional evidence of the amount owed.

■ As claimed by the Boggs in their point two, the lack of substantial evidence to support the trial court's judgment requires reversal and remand for a retrial. In an effort to minimize the potential for error on retrial, this court will set out what is required for Affiliated to make a prima facie case. Affiliated must admit in evidence the sixteen notes and the various loan agreements and prove that they were signed. In addition, Affiliated must present sufficient evidence from which the trier of fact can calculate the specific sums owed by the Boggs to Affiliated.

■ In order for Affiliated to prove the amount due and owing by the Boggs, there must be evidence demonstrating (1) the date and original principal balance of each loan; (2) the date and amount of each payment made on each student's account; (3) the date and amount of each fee assessed under the loan agreement or collection agreement; and (4) the interest rate applicable to the balance due on the loans. *See id.* at 854. The admission into evidence of the sixteen promissory notes will supply proof of the date and the original principal balance of each loan. Under the loan agreement, Affiliated has the right to apply student payments in any manner Affiliated deems acceptable. Therefore, other than the origination fee and the programming fee which are to be added to the outstanding principal balance, all other fees should be deducted from payments made by each student. Once the fees are deducted, then the student payment is credited toward the amount due on the particular note. With knowledge of the dates and amounts of credits to the loan balance, it will be possible for the finder of fact to calculate the interest accrued.

■ With regard to the interest rate applicable, § 408.030.1 provides, in pertinent part, that "[p]arties may agree, in writing, to a rate of interest not exceeding ten percent per annum on money due or to become due upon any contract, including a contract for commitment; except that, when the 'market

---

5. How payments of $11,976.67, deducted from a principal balance of $12,259.79, could result in a balance due of $12,252.15 is not apparent from the record.

rate' exceeds ten percent per annum, parties may agree, in writing, to a rate of interest not exceeding the 'market rate'." Section 408.035, RSMo 1986, allows parties to agree in writing to any rate of interest or fees in connection with any loan to a corporation, business loan of $5000 or more, real estate loan or loan of $5000 or more secured by stock, bonds, bills of exchange, certificates of deposit or bills of lading. "[E]ntitlement to collect a higher rate of interest than nine percent from the borrower depends on proof that the borrower has contracted in writing to pay the higher rate." *Addison v. Jester,* 758 S.W.2d 454, 458 (Mo.App.1988). In the absence of an agreed-upon rate in writing, § 408.020 allows creditors to receive interest at the rate of nine percent per annum. Similarly, a writing is required for a lender to collect payments of interest upon interest. Section 408.080, RSMo 1986.

■ In this case, the promissory notes provide for interest "at the prevailing rate established from time to time at Lender's corporate office." After a default in any promise to pay a note, the notes provide for a "default rate" of an additional two percent interest per annum. Although Mr. Downey testified that the rate applicable to the promissory notes executed by the Boggs was eighteen percent per annum and that Affiliated had informed the Boggs of the rate, there is no express statement of the interest rate on the face of the notes nor is there an apparent method of calculating the rate. Without a specific written contract rate agreed to by the Boggs, Affiliated may not recover interest on the notes at a rate of more than nine percent, or eleven percent if the "default rate" applies. Similarly, without a written agreement for the collection of compound interest, Affiliated is not entitled to collect interest on interest.

■ Affiliated's method of calculation on its monthly debt summaries evidences that it charged the Boggs an interest rate of 1.5 percent per month and also compounded interest. It further reveals that Affiliated may have charged interest on all fees it assessed against the Boggs, since such fees were included in the "debt balance." The origination fee and the programming fee are the only fees which, under the loan agreement, were to be added to the principal balance of the promissory notes and subject to interest charges. Unless there is evidence on retrial to support a finding that the parties had contracted in writing for a specific rate of interest in excess of nine percent, for the compounding of interest and for charging of interest on all fees, Affiliated will only be entitled to a judgment for the legal rate of nine percent simple interest on the balance owed on the promissory notes, plus the additional two percent "default rate" if supported by the evidence.

■ The Boggs also claim that the additional charges and fees, including a ten percent origination fee, were usurious. In a suit on a promissory note, the defendant generally has the burden on the defense of usury. *Beneficial Fin. Co. of St. Charles, Inc. v. Kitson,* 530 S.W.2d 497, 505 (Mo.App.1975). If the defendant brings forth evidence that no services were performed for the charges made, the burden shifts to the lender to show what services were rendered, the services were substantial, necessary and valuable, and the amount charged was reasonable. *Garrett v. Citizens Sav. Ass'n,* 636 S.W.2d 104, 110 (Mo.App.1982).

■ In this case, the Boggs failed to assert in their petition or at trial that the amounts charged by Affiliated for the origination, collection and exit fees were disguised usurious interest charges. Although Mr. Boggs testified regarding his dissatisfaction with Affiliated's collections from students, he did not allege that no services were performed for the additional charges. On the other hand, Mr. Downey explained that the collection fees were charged to process the payments from the students and that late fees and insufficient funds fees were charged when a student's payment was late or rejected.

Like Affiliated's error in failing to make a prima facie case on the promissory notes, the Boggs' failure to allege and prove usurious fees is not fatal to their defense. Because the case is being remanded to the trial court for retrial, the Boggs may seek leave to amend their pleading of the defense of usury to include a claim that additional charges and fees were actually disguised usurious interest and on retrial present additional evidence to

prove the defense. *Butcher v. Main,* 426 S.W.2d 356, 358 (Mo.1968) (When a case is remanded generally, all issues are open to consideration on retrial, and the "pleadings may be amended or new and controlling facts produced."). *See also Pinkston v. Ellington,* 845 S.W.2d 627, 629 (Mo.App.1992).

Finally, the Boggs argue that the trial court erred in failing to offset the judgment in favor of Affiliated by twice the interest illegally charged. They rely on § 408.030.2 which provides, "If a rate of interest greater than permitted by law is paid, the person paying the same or his legal representative may recover twice the amount of interest thus paid...." Section 408.030.2.

▮ Under Missouri law, usury may be used as a defense against a claim to recover excessive interest, or as a basis to recover excessive interest and charges paid and penalties. *See Addison,* 758 S.W.2d at 458. Section 408.060 authorizes a borrower to plead usury as a defense to a suit for payment of excessive interest. Section 408.050, however, authorizes a borrower who has paid usurious interest to recover the excess interest charges and costs. Additionally, § 408.030.2 allows double damages, costs of suit and a reasonable attorney's fee where usurious interest was paid.

▮ The Boggs did not affirmatively plead a claim for damages for charging usurious interest under §§ 408.030.2 or 408.050, either as an affirmative defense or as a counterclaim. Instead, they asserted the defense of usury available under § 408.060 against Affiliated's claim on the promissory notes. The trial court, therefore, did not err in failing to award an offset or double damages in this case. On remand, the Boggs will have the opportunity to seek leave to amend their pleadings to include such a defense or counterclaim. *Butcher,* 426 S.W.2d at 358; *Pinkston,* 845 S.W.2d at 629.

The judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

All concur.