Eugene L. MANFIELD, Respondent,

v.

AUDITORIUM BAR & GRILL,
INC., et al., Appellants.

No. WD 52716.

Missouri Court of Appeals,
Western District.

Feb. 10, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court March 31, 1998.

Application for Transfer Denied
May 26, 1998.

Earl H. Schrader, Jr., Kansas City, for Appellants.

Larry K. Enkelmann, Gladstone, for Respondent.

Before SPINDEN, P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Auditorium Bar and Grill, Inc. (ABG), ABG's president, Lloyd Stark, and Diane Hansell appeal the circuit court's judgment for Eugene Manfield, respondent, wherein he was awarded: (1) on Count I of his petition for default of a promissory note the principal sum of $80,000, plus prejudgment interest thereon of $14,939.28 computed at the statutory rate of nine percent per annum, for a total of $94,939.28, with postjudgment interest thereon at the statutory rate, and attorney fees of $12,000; (2) on Count II of his

petition for default of a promissory note the principal sum of $6,000, plus prejudgment interest thereon of $1,103.29 computed at the statutory rate of nine percent per annum, for a total of $7,103.29, with postjudgment interest thereon at the statutory rate, and attorney fees of $900; and, (3) on Count III of his petition for breach of the parties' lease agreement requiring appellants to pay increased real estate taxes in the amount of $3,356.88, plus prejudgment interest thereon of $617.26 computed at the statutory rate of nine percent per annum, for a total of $3,974.14, with postjudgment interest thereon at the statutory rate.

Appellants assert four points on appeal. They claim that the trial court erred: (1) in awarding respondent judgment on Counts I and II of his petition in the full amounts due and payable on the two defaulted promissory notes because it resulted in his being "unjustly enriched"; (2) in awarding respondent attorney fees on Counts I and II in the amount of fifteen percent of the balances due and payable on the promissory notes because such an award did not constitute "reasonable" attorney fees as provided for in the notes; (3) in awarding respondent statutory prejudgment interest on Counts I and II pursuant to § 408.020 because: (a) § 408.020 [1] was not applicable; and, (b) even assuming, *arguendo*, that it did apply, the court improperly compounded the prejudgment interest awarded; and, (4) in awarding the respondent $3,974.14 on Count III of his petition for payment of increased real estate taxes as provided for in the parties' lease agreement because there was insufficient evidence to support such an award.

We affirm in part and reverse and remand in part.

### Facts

In 1988, Eugene Manfield, respondent, sold the restaurant business known as Auditorium Bar and Grill, including various items of restaurant equipment, fixtures, and merchandise to ABG. The parties agreed to a purchase price of $140,000, which was to be paid by a payment of $20,000 in cash and the execution of a promissory note in the amount of $120,000. As indicated by the bill of sale dated March 29, 1988, the appellants were to acquire, *inter alia*, from the respondent, as part of the restaurant purchase, a walk-in freezer, a walk-in cooler, an electronic kitchen exhaust system, and two five-ton Carrier air conditioners with heating units as part of the restaurant purchase.

Pursuant to the parties' agreement, the respondent was paid $20,000 in cash and a note for $120,000 was executed jointly and severally by ABG, its president, Lloyd Stark, Diane Hansell, and Peter H. Black. Shortly thereafter, by agreement of the parties a new promissory note, dated March 9, 1989, was executed and substituted for the original $120,000 note. This note was executed by the appellants, but not by Mr. Black. As a result of Mr. Black being released from the purchase agreement, a second promissory note in favor of respondent was executed by the appellants in the amount of $6,000, dated March 9, 1989. There is no explanation in the record as to why an additional note was required because of Mr. Black's release. The $120,000 promissory note called for annual payments of $20,000 commencing on December 26, 1989, and continuing on the 26th day of December of each year thereafter until paid in full. The $6,000 note called for annual payments of $2,000 on December 26th, 1989, and continuing on the 26th day of December of each year thereafter until paid in full. Both notes provided for the payment of a zero percent interest rate. In addition to the provision for the payment of no interest, the notes provided for the payment of a "reasonable sum as attorney's fees" in the event suit was brought for their collection.

In addition to purchasing the restaurant, the appellants entered into a five-year lease agreement with respondent dated December 29, 1988, wherein they leased from him the building located at 217 West 14th Street, Kansas City, Missouri, which housed the restaurant, with a provision authorizing two five-year renewals at the option of the appellants. The lease agreement further provided that the appellants were to be responsible, as additional rent, for any increase in the real

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

estate taxes due on the property which occurred during any tax year the lease was in effect.

On January 4, 1991, the City of Kansas City, Missouri (the City), filed a petition in condemnation in the Circuit Court of Jackson County, Missouri, seeking to condemn by the power of eminent domain the three-story building where the restaurant was located. In its condemnation petition, the City named as defendants the owner of the real property, respondent, and the tenant and business operator, appellants. Exceptions to the commissioners' award of $360,000 and a request for a jury trial were filed by the respondent. At trial, the court gave a jury instruction instructing, *inter alia*, the jury that the heating and air conditioning equipment, the walk-in cooler, and the exhaust ventilation system were to be considered as part of the real property to be condemned.

On January 27, 1995, the jury in the condemnation case returned a verdict against the City assessing damages of $400,000. Thereafter, the respondent filed a motion for apportionment of the $400,000 requesting that he be awarded the entire amount. ABG argued to the trial court in the condemnation case that it was entitled to a portion of the condemnation award because the award included compensation for the heating and air conditioning equipment, the walk-in cooler, and the exhaust ventilation system which it had purchased from the respondent as part of its purchase of the restaurant. On April 28, 1995, after hearing evidence from the respondent and ABG on respondent's motion, the court found that the respondent owned all the property that was condemned and entered a final judgment awarding him the entire $400,000.

ABG filed an appeal with this court challenging the trial court's failure to apportion to it a portion of the condemnation award. In that appeal, this court held in *City of Kansas City v. Manfield*, 926 S.W.2d 51 (Mo. App.1996) (*Manfield I*), that there was no justiciable case or controversy before the court and dismissed the appeal. In so holding, this court found that ABG was not an aggrieved party of the condemnation proceeding in that it had failed to establish an interest in any property condemned by the City. In reaching this conclusion, this court found that: (1) ABG did not present any evidence at the apportionment hearing to support a claim of an interest in the condemned property; (2) the lease between the parties precluded any sharing of a condemnation award for loss of business or depreciation to and cost of removal of equipment or fixtures; and, (3) ABG had the opportunity to remove prior to the demolition of the building any property it claimed it owned, but chose not to do so, thereby abandoning it. *Id.* at 52–54.

Appellants paid the first annual installment of $20,000 on the $120,000 note in December of 1989 and the second $20,000 installment in December of 1990. The December 1991 payment was never made, leaving a principal balance due on the note of $80,000. As to the $6,000 note, no payments were ever made. On March 2, 1994, while the condemnation case was still pending and after the appellants had defaulted on the notes and demand was made for payment thereon, respondent filed the underlying suit seeking: (1) in Count I of his petition for default of a promissory note, the principal sum of $80,000, plus prejudgment and postjudgment interest thereon at the statutory rate of nine percent per annum, and reasonable attorney fees; (2) in Count II of his petition for default of a promissory note, the principal sum of $6,000, plus prejudgment and postjudgment interest thereon at the statutory rate of nine percent per annum, and attorney fees; and, (3) in Count III of his petition for breach of the parties' lease agreement requiring appellants to pay increased real estate taxes, the amount of $3,356.88, plus prejudgment and postjudgment interest thereon at the statutory rate of nine percent per annum.

At trial, the parties agreed that the principal balance due on the $120,000 note was $80,000. As to the second note, the respondent testified that no payments had been made, leaving a principal balance due of $6,000. Over appellants' best evidence objection, respondent was allowed to testify regarding the increased real estate taxes he

claimed were due from appellants under the lease, but he did not produce the tax bills or paid receipts for the same. The parties stipulated to the admission of the transcript of the condemnation proceeding.

On March 22, 1996, after the condemnation case was concluded, the trial court in the case at bar entered its judgment awarding respondent: (1) on Count I of his petition, the principal sum of $80,000, plus prejudgment interest thereon of $14,939.28 computed at the statutory rate of nine percent per annum, for a total of $94,939.28, with postjudgment interest thereon, and attorney fees of $12,000; (2) on Count II, the principal sum of $6,000, plus prejudgment interest thereon of $1,103.29 computed at the statutory rate of nine percent per annum, for a total of $7,103.29, with postjudgment interest thereon, and attorney fees of $900; and, (3) on Count III, $3,356.88, plus prejudgment interest thereon of $617.26 computed at the statutory rate of nine percent per annum, for a total of $3,974.14, with postjudgment interest thereon. The appellants filed a motion for a new trial which was overruled.

This appeal follows.

### Standard of Review

Our review of a court-tried civil case is governed by *Murphy v. Carron. Green Acres Enterprises, Inc. v. Freeman*, 876 S.W.2d 636, 638 (Mo.App.1994). We must affirm the judgment of the trial court unless there is no substantial evidence to support it; it is against the weight of the evidence; or, it erroneously declares or applies the law. *Id.*

### I.

In their Point I, the appellants do not dispute that the promissory notes in question were in default; rather, they claim that the trial court erred in entering judgment for respondent in the full amount of the balances due on the two notes in that the record demonstrates that the judgment resulted in respondent being "unjustly enriched." Appellants contend that respondent was unjustly enriched in that as a result of the trial court's judgment, he was being paid twice for certain restaurant fixtures which were sold by him to ABG as part of the sale of the restaurant business, specifically the heating and air conditioning equipment, the walk-in cooler, and exhaust ventilation system, in that he had already been paid for these items pursuant to the final condemnation award in the condemnation case concerning the real property owned by the respondent and where the restaurant was located. In effect, appellants are contending that the respondent's receipt of the entire $400,000 condemnation award in the condemnation case was, *inter alia,* for the fixtures which ABG had purchased from respondent. Thus, the issue raised by the appellants is whether the record supports their claim that the respondent was unjustly enriched by the trial court's judgment allowing him to recover the full amount of the principal balances due and payable on the two notes in default.

" 'Unjust enrichment occurs where a benefit is conferred upon a person under circumstances where retention of that benefit without paying for it would be unjust.' " *River's Bend Red–E–Mix, Inc. v. Parade Park Homes, Inc.,* 919 S.W.2d 1, 4 (Mo. App.1996) (quoting *Lee Brothers Contractors v. Christy Park Baptist Church,* 706 S.W.2d 608, 609 (Mo.App.1986)). The principle of unjust enrichment has given rise to the doctrine of quasi-contract, also known as a contract implied in law, as a theory of recovery. *Erslon v. Vee–Jay Cement Contr. Co.,* 728 S.W.2d 711, 713 (Mo.App.1987) (citations omitted). Courts generally recognize that the essential elements of quasi-contract are: "(1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the fact of such benefit; and (3) acceptance and retention by the defendant of that benefit under circumstances in which retention without payment would be inequitable." *Green Quarries, Inc. v. Raasch,* 676 S.W.2d 261, 264 (Mo.App.1984). Here, in attempting to avoid full payment of the balances due on the notes in default, the appellants employed unjust enrichment as an affirmative defense under Rule 55.08. Consequently, they were required to affirmatively plead it in their responsive pleading. Rule 55.08; *Kuehnle v. Gray,* 865 S.W.2d 439, 441 (Mo. App.1993). Although they pled, as affirma-

tive defenses, full payment, accord and satisfaction, and release, they failed to plead unjust enrichment. As such, regardless of the merits of their affirmative defense of unjust enrichment, they are barred from raising it now on appeal. *Id.*

Even assuming, *arguendo*, that we could treat this not as a case of the appellants' failure to plead an affirmative defense, but as a failure to correctly label as unjust enrichment one of the affirmative defenses which they did plead, they still must fail on their claim in Point I. *See Shepard v. McGill*, 809 S.W.2d 434, 437 (Mo.App.1991) (holding that although the defendant labeled his pleaded defense as *"res judicata,"* where the facts set forth in his answer clearly presented a defense of collateral estoppel, the trial court was free to consider collateral estoppel as a defense). Even if this were a case of mislabeling their affirmative defense of unjust enrichment, the appellants still had the burden of presenting evidence to support such an affirmative defense, Rule 55.08, which would include, *inter alia*, evidence of the amount of the benefit the respondent received which rightfully belonged to them. *Green Quarries, Inc.*, 676 S.W.2d at 264. In this respect, the appellants pled in their answer that the $400,000 award to the respondent in the City's condemnation of the restaurant building included an amount for the fixtures which the respondent had sold to ABG. Thus, in determining whether the appellants carried their burden on their defense of unjust enrichment, we must look to the record to see if it supports appellants' contention.

As evidence of the respondent being paid in the condemnation case for the fixtures in question, the appellants point to the portion of the record of the condemnation case admitted below, specifically the jury instructions dealing with the jury's assessment of damages and the jury's verdict. In this respect, Instruction No. 7 states as follows:

> You are instructed that the heating equipment, air conditioning equipment, the walk in cooler attached to the real property, exhaust ventilation, duct work, electrical wiring and plumbing are to be considered as part of the defendant's building.

> The term real property as used in this instruction is defined as land and whatever is affixed to the land.

Instruction No. 8 states that the "phrase 'property' as used in Instruction No. 9 means real property and not personal property." Instruction No. 9 states, in pertinent part, that "[y]ou must award defendants such sum as you believe was the fair market value of the defendants' property immediately before the taking on March 27, 1991." Pursuant to the instructions given, the jury assessed damages of $400,000. From the jury instructions and the fact the jury assessed the defendants' damages at $400,000, with "defendants" including ABG, as well as the respondent, the appellants argue that it is reasonable to infer that the respondent had been paid for the fixtures purchased by ABG from him.

Section 523.053 sets out the procedure for distributing condemnation awards among several defendants. By its terms, it applies not only to the commissioners' award, but also to an award pursuant to a jury trial of exceptions, such as in the case at bar. *Mo. Highway & Transp. Com'n v. Roth*, 735 S.W.2d 19, 22 (Mo.App.1987); *City of Columbia v. Baurichter*, 684 S.W.2d 903, 905 (Mo. App.1985). Section 523.053 provides generally that if the several defendants cannot agree as to the percentage split of the commissioners' award, or the jury's award in the case of a trial of exceptions, then the trial court is required to apportion the award based on what the court determines to be each defendant's interest in the condemned property, if any. Here, subsequent to the jury's verdict, the trial court, on the motion of the respondent requesting that he be awarded the entire $400,000, conducted an apportionment hearing pursuant to § 523.053. After hearing evidence from the respondent and ABG on respondent's motion, the trial court found that "all right, title and interest in the property acquired in [the] condemnation [by the City] was vested in defendant Eugene L. Manfield" and entered a judgment accordingly awarding him the entire $400,000 in damages assessed by the jury.

■ Assuming that some portion of the condemnation award was for the value of the

fixtures claimed by ABG, the appellants still had the burden in this subsequent action of showing the value of the fixtures for which they claim respondent was being paid twice, in that, under their theory of unjust enrichment, it is this amount that was to be credited or set off against the balances due and owing by them on the notes in default. In other words, the appellants had the burden of introducing sufficient evidence from which the trial court could have determined the value of the fixtures in question in order to permit it to make the appropriate credit or set-off claimed by the appellants as the amount the respondent was allegedly being unjustly enriched. A careful review of the record discloses no evidence was introduced by the appellants to allow the court to perform this vital function. As such, even if properly raised, appellants' defense of unjust enrichment would still fail in that it was not sufficiently proven.

Point denied.

## II.

In Point II, appellants claim that the trial court erred in awarding respondent attorney fees on Counts I and II of his petition in the amount of fifteen percent of the outstanding balances due on the defaulted notes. Appellants do not contend that an award of attorney fees was error; rather, they contend that under the circumstances here the award in the amount of fifteen percent of the balances due and payable on the notes did not constitute "reasonable attorney fees" as agreed upon by the parties in the notes.

 The trial court is considered an expert in the necessity, reasonableness and the value of attorney fees. *Leone v. Leone,* 917 S.W.2d 608, 616 (Mo.App.1996) (citing *Hembree–Shanaberger v. Shanaberger,* 903 S.W.2d 202, 205 (Mo.App.1995)). To justify a reversal of an award of attorney fees, the appellants must show that the trial court abused its discretion. *Leone,* 917 S.W.2d at 616. "An abuse of discretion is established only when the award is so 'clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice.'" *Id.* (citations omitted). However, the trial court's discretion is not without

limits and it must not act arbitrarily or with indifference. *In re Alcolac, Inc., Litigation,* 945 S.W.2d 459, 461 (Mo.App.1997) (citations omitted). Thus, the issue for us to decide is whether the trial court abused its discretion in awarding attorney fees to respondent on Counts I and II of his petition in the total amount of $12,900.

 The record here reflects that the notes provided for the payment of a "reasonable sum as attorney's fees" in the event suit was brought to collect the notes. Pursuant to this provision, respondent requested at trial that reasonable attorney fees be assessed against appellants in the amount of fifteen percent of the balance due on each note, which resulted in an award of attorney fees of $12,000 and $900 on Counts I and II, respectively. To this request, the trial court responded that "[r]easonable attorneys fee, fifteen percent, that's a conclusion; not a fact." We agree. In calculating the reasonable value of legal services, the trial court "should consider the time spent, nature and character of services rendered, nature and importance of the subject matter, degree of responsibility imposed on the attorney, value of property or money involved, degree of professional ability required and the result." *Id.* (citations omitted). From the record we glean that, although the trial court agreed that an award to respondent of attorney fees in an amount equal to fifteen percent of the balances due on the notes was a conclusion, not a fact, it nevertheless awarded attorney fees in that amount without any apparent consideration of the appropriate factors.

As to the amount of time spent, the nature and character of the services rendered, and the nature and importance of the subject matter, respondent's trial counsel, during his oral argument, admitted that the underlying lawsuit was a "simple" promissory note case. After reviewing the record, we find no evidence that this case was anything more than that. The case did not involve complicated legal issues requiring extensive research, pleadings, or discovery, or time-consuming court proceedings. As to the degree of responsibility that was imposed on the respondent's attorney, given the admitted simple nature of the case, his responsibilities were

certainly not great. And, as to the value of property or money involved, although the amount was not insignificant, comparatively speaking this was not a "high-dollar" lawsuit either. Finally, as to the degree of professional ability required and the result, as stated, *supra*, this was not a difficult or complex case from a factual or legal perspective.

■ Because there is nothing in the record indicating what factors, if any, the trial court considered or relied upon in calculating its award of attorney fees to respondent and because this appears to be a rather simple case factually and legally, we find no apparent basis in the record for the trial court's award of attorney fees to respondent totaling $12,900. Thus, we find that the trial court's judgment awarding attorney fees of $12,900 was unsupported by the record and arbitrary and should be reversed and remanded for further proceedings to establish a reasonable award of attorney fees to respondent consistent with this opinion.

### III.

In their Point III, appellants claim in two subpoints that the trial court erred in awarding respondent statutory prejudgment interest of nine percent per annum pursuant to § 408.020 on Counts I and II of his petition for payment of the defaulted promissory notes. In appellants' first subpoint, they claim that the trial court erred in awarding statutory prejudgment interest because § 408.020 did not apply in that: (1) the parties had agreed to the payment of zero interest; and, (2) there was no evidence in the record from which to find if and when the claims became liquidated. In their second subpoint, they claim that even assuming, *arguendo*, that the assessment of prejudgment interest was proper under § 408.020, the court improperly compounded the prejudgment interest awarded. Thus, we must first decide whether § 408.020, dealing with the payment of statutory interest after maturity of a note, will apply where the parties have agreed to the payment of interest at the rate of zero percent.

■ Section 408.020 states, in pertinent part, "[c]reditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and demand of payment is made...." Here, it is the meaning of *"when no other rate is agreed upon"* which is in dispute. (Emphasis added.) In interpreting statutes, we must give the words contained in the statute their plain and ordinary meaning. *Burch Food Services, Inc. v. Missouri Division of Employment Security*, 945 S.W.2d 478, 480 (Mo. App.1997) (citing *McCollum v. Director of Revenue*, 906 S.W.2d 368, 369 (Mo. banc 1995)). The primary rule of statutory construction is to ascertain the legislative intent from the language used. *Nall v. Highway and Transp. Employees' and Highway Patrol Retirement System*, 943 S.W.2d 708, 711 (Mo.App.1997) (citing *Jones v. Director of Revenue*, 832 S.W.2d 516, 517 (Mo. banc 1992)). "Where the language of the statute is clear and unambiguous, there is no room for construction. In determining whether a statute is clear and unambiguous, the standard is whether the statute's terms are plain and clear to one of ordinary intelligence." *Nall*, 943 S.W.2d at 711 (citing *Wolff Shoe Co. v. Director of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988)).

■ Here, there is no dispute that the parties agreed to interest on the notes at the rate of zero percent, which the appellants now seek to enforce. The fact that the rate agreed upon was zero percent does not change the fact that there was an agreement between them as to what interest rate would be paid. This is not a case where an interest rate was never discussed and decided upon. *See Prange v. Prange*, 786 S.W.2d 150, 151 (Mo.App.1990) and *Bank of Kirksville v. Small*, 766 S.W.2d 770, 771–72 (Mo.App.1989) (holding that the statutory prejudgment interest rate applies where there is no agreement as to an interest rate and the rate of interest was left blank in the note). The "no" found in the phrase in the statute, "when no other rate is agreed upon," obviously refers to the lack of an agreement as to interest, not to an agreement to pay no or zero interest. Giving the phrase, "when no other rate is agreed upon," in § 408.020 its plain and ordinary meaning, we interpret it to mean that where the parties to a note

have agreed upon interest at any rate, including a rate of zero, they are bound by their agreement and an award of interest at the statutory rate is not implicated.

Having determined that § 408.020 does not apply in a case where the parties have agreed to a zero percent interest rate, we now turn to respondent's argument that the parties' agreement to a zero percent interest rate only applied until the maturity or default of the notes, and there was, in fact, no agreement as to an interest rate upon maturity or default, which would trigger the award of statutory interest pursuant to § 408.020. The respondent is essentially arguing that § 408.020 should be interpreted such that it applies where there is no separate and specific agreement between the parties as to the interest rate to be charged after a note's maturity or default. We reject this argument.

Section 408.020 states that where "no other rate is agreed upon," the statutory interest rate will apply. There is nothing in this language to suggest that § 408.020 is to apply where parties agree in a note to an interest rate to be paid, but do not specify whether it is to apply before and/or after its maturity or default. If the legislature had intended for the statutory interest rate to apply where, as here, there is an agreement as to the rate of interest to be charged, but no separate and specific agreement as to whether the same rate is to be charged after maturity or default, it could have simply said so. It did not. The clear implication of the statutory language used is that if the parties to a note have agreed upon an interest rate without specifying whether it is to apply before and/or after maturity, the statutory interest rate of § 408.020 cannot be charged.

Even assuming, *arguendo*, that § 408.020 can be interpreted as the respondent contends, his claim that it applies here is still without merit. Although the statute clearly recognizes the parties' right to contract as to interest rates, including different rates to be charged before and after a note's maturity or default, there is nothing in the notes in question or the record to indicate that the parties intended that the zero percent interest rate agreed upon was to apply only prior to matu-

rity or default. Here, if the parties had intended an interest rate to be paid upon maturity or default, other than the zero percent agreed upon, they could have negotiated and provided for such in the notes, but did not, the implication being that they intended the zero percent interest rate to apply for all purposes. In any event, because the parties here agreed to an interest rate of zero percent, and appellants now seek to enforce that rate upon their default, we find that the trial court erred in applying § 408.020 and awarding respondent on Counts I and II of his petition prejudgment interest at the statutory rate and reverse the award. Because we reverse the judgment of the trial court awarding respondent prejudgment interest on Counts I and II of his petition at the statutory rate, we need not address appellants' other contentions under their Point III.

## IV.

In Point IV, the appellants claim that the trial court erred in awarding the respondent on Count III of his petition the sum of $3,356.88 for payment of increased real estate taxes as required by the parties' lease agreement because there was insufficient evidence to support such an award. At trial, respondent testified that the real estate taxes on the restaurant building had increased during the time that the appellants' lease was in effect in the total amount of $3,356.88. Appellants objected to this testimony on the basis of the best evidence rule. Appellants argue that the respondent's testimony as to the increase in real estate taxes was inadmissible to show the amount of increase in that the best evidence of the increase was the tax bills and paid receipts, which were never introduced; and therefore, the evidence was insufficient to support the trial court's award on Count III. The issue then for us to decide is whether the best evidence objection of the appellants should have been sustained precluding the respondent from testifying as to the amount of the increase in real estate taxes he paid on the restaurant building. Although it is difficult to determine from the record exactly what the trial court's ruling was on appellants' objection, it doesn't mat-

ter in that the respondent's testimony was clearly admissible.

▮ The best evidence rule "does not come into play simply because a witness is testifying to facts which are also contained in a writing. The rule is activated only when the terms of the writing, itself, are in dispute." *State v. Kirksey,* 727 S.W.2d 201, 203 (Mo.App.1987). "[T]he best evidence rule does not exclude evidence based on personal knowledge even if documents or other writings would provide some of the same information." *Cooley v. Director of Revenue,* 896 S.W.2d 468, 470 (Mo. banc 1995) (citations omitted). "[E]vidence of a payment may be given without production of the receipt...." *Id.* at 471. Where a witness testifies as to the amount he or she paid based on personal knowledge, not what was on the receipt, the rule is not applicable. *Kirksey,* 727 S.W.2d at 203. Thus, the respondent's testimony here as to the amount he paid in real estate taxes was admissible to show the amount of increased real estate taxes appellants were required to pay under their lease without the production of the tax bills or paid receipts. *Id.* And, because the respondent's testimony as to the increase in real estate taxes was admissible, we find the record would support an award to him on Count III of his petition for $3,356.88, and the trial court did not err in awarding him that amount.

Point denied.

### Conclusion

The circuit court's judgment as to the respondent's petition on Count I, for default of a promissory note, awarding the principal sum of $80,000 and postjudgment interest thereon; on Count II, for default of a promissory note, awarding the principal sum of $6,000 and postjudgment interest thereon; and, on Count III, for payment of increased real estate taxes, awarding $3,974.14 and postjudgment interest thereon, we affirm. The circuit court's judgment as to Counts I and II, awarding respondent $12,900 in attorney fees, we reverse and remand the cause for the trial court to conduct further proceedings to determine the amount of reasonable attorney fees due respondent under the promissory notes, consistent with this opin-

ion. The circuit court's judgment as to Counts I and II, awarding respondent $14,939.28 and $1,103.29, respectively, in prejudgment interest at the statutory rate, we reverse and remand the cause directing the court to amend its judgment disallowing any prejudgment interest.

All concur.