**STUDENT LOAN MARKETING ASSOCIATION, Respondent,**

v.

**Jeffery W. HOLLOWAY, Appellant.**

**No. WD 57535.**

Missouri Court of Appeals,
Western District.

Aug. 29, 2000.

Keith J. Shuttleworth, Kansas City, for Respondent.

Steven A. Fritz, Sedalia, for Appellant.

Before: HOWARD, P.J., and ELLIS and LAURA DENVIR STITH, JJ.

VICTOR C. HOWARD, Presiding Judge.

Jeffery W. Holloway appeals from the judgment of the trial court, sitting without a jury, in favor of Student Loan Marketing Association (also known as Sallie Mae, hereinafter "SLMA") in its suit on promissory notes executed by Mr. Holloway. He brings five claims of error on appeal, all based on alleged evidentiary insufficiencies at trial.

The judgment of the trial court is reversed and the case is remanded for further proceedings.

## Background

In its first amended petition, SLMA alleged that between the years of 1985 and 1988, "pursuant to the U.S. Department of Health and Human Services Health Education Assistance Program, §§ 42 U.S.C. §§ 294 – 294l," Mr. Holloway executed

eight separate promissory notes for a total of $79,000.[1] The petition further alleged that the promissory notes had been assigned by the original payees to SLMA. SLMA then averred that Mr. Holloway defaulted on his educational loans, and the sum of $155,866.27 plus accrued interest in the amount of $6,375.11 remained due and owing on the notes. SLMA also requested attorney's fees.

The case went to a trial before the court on April 23, 1999. Mr. Holloway did not appear or put on any evidence. His counsel, however, did make numerous evidentiary objections to SLMA's evidence. The trial judge provisionally admitted the arguably admissible evidence, reserving judgment until all of the evidence was in. After all evidence was heard, the issues were taken under advisement, and the trial judge ordered counsel to brief Mr. Holloway's counsel's evidentiary objections raised throughout the trial. After considering the parties' briefing of the issues,[2] the court entered its written findings and judgment in favor of SLMA for the amount claimed due and owing plus $10,000 in attorney's fees.

## Standard of Review

Our standard of review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32.

## Point I

■ In his first point on appeal, Mr. Holloway alleges that because the promis-

sory notes were neither offered nor admitted into evidence, the evidence was insufficient for the court to render judgment in SLMA's favor. The issue is whether SLMA's failure to offer the notes for admission into evidence rendered its claim based thereon invalid.

To recover on a promissory note, the plaintiff must (1) produce the note (2) signed by the maker and (3) show the balance due. [Citation omitted.] "[P]resentment of the note or satisfactory proof that it has been lost or destroyed are essential elements of the case because the instrument itself is the exclusive ground for the cause of action." Absent presentment of the note or proof that it was lost or destroyed, a judgment based on the instrument fails for want of substantial evidence to support it.

*Affiliated Acceptance Corp. v. Boggs*, 917 S.W.2d 652, 656 (Mo.App. W.D.1996) (quoting *Union Sav. Bank v. Cassing*, 691 S.W.2d 513, 514 (Mo.App. W.D.1985)).

Although neither party cites the *Cassing* or *Boggs* cases, *supra*, both aid in this issue's resolution. In those cases, purported copies of the promissory notes sued on were attached to the petitions as exhibits, as the notes apparently were in this case.[3] Likewise, the parties suing on the notes each presented testimonial evidence concerning the notes. The notes were marked as exhibits and handed to the witnesses as they testified concerning the notes' contents, but both plaintiffs failed to offer the notes for admission as evidence in the cases.[4] This court found in both cases that the plaintiffs' failures to introduce the notes into evidence required the judgments to be reversed and the cases

1. Mr. Holloway was enrolled as a student at the Washington University School of Dental Medicine when the educational loan promissory notes at issue were executed.

2. These briefs are not part of the record on appeal. However, based on the trial court's judgment, it appears that Mr. Holloway's evidentiary objections were overruled.

3. The notes are not attached to the copy of the petition in the legal file on appeal, but it does not appear Mr. Holloway disputes that the notes were attached to the petition.

4. One of the sixteen promissory notes sued on was admitted in *Boggs*, 917 S.W.2d at 655.

remanded due to a failure of proof of the judgments in favor of the plaintiffs suing on the notes. *Cassing,* 691 S.W.2d at 515; *Boggs,* 917 S.W.2d at 656–57.

We consider the testimonial evidence in *Cassing* and *Boggs.* In *Cassing,* the assistant vice-president of the plaintiff bank merely identified the exhibit as a note given to the bank by the defendant. He did not testify about any other specifics, i.e., he did not testify as to whether the exhibit was the note sued on, what that note's due date was, or whether the bank had presented the note to defendant and demanded payment. *Cassing,* 691 S.W.2d at 514. In *Boggs,* the CEO–CFO of plaintiff Affiliated testified concerning the collection and loan arrangement with Mr. Boggs. He testified to how the balances of the notes were aggregated into two accounts, to how payments on the loan were applied to the balance due and to the outstanding balance due on the notes. *Boggs,* 917 S.W.2d at 655. In both cases, this court found that the testimonial evidence was not sufficient to correct the plaintiffs' failures to offer the actual promissory notes for admission into evidence.

In this case, Ms. Rhea–Vance, SLMA's loan-dispute specialist on Mr. Holloway's account, identified each of the promissory notes in SLMA's exhibit number one by testifying that SLMA's assignors of the notes and Mr. Holloway were the parties to the notes, by telling the court the individual amount (a total of $79,000) and date on which each was signed, by testifying that the signature appearing on the notes was "Jeffery W. Holloway," by describing how the interest is calculated, and by describing the repayment provisions in the notes. As Ms. Rhea–Vance testified, she held the notes in her hand, and the judge personally verified which note she was testifying about by referencing the notes in

his court file. However, none of the notes were offered or admitted into evidence. Nonetheless, the trial court awarded SLMA a judgment on the notes in the amount of $155,866.27 plus $6,375.11 in accrued interest, the full amount prayed for and the amount Ms. Rhea–Vance testified was due to SLMA on the notes.

Although the notes had been attached and filed with the petition, "[t]he mere filing of a document does not put it before the court as evidence." *Hopkins v. Hopkins,* 664 S.W.2d 273, 274 (Mo.App. E.D. 1984) (holding that the mere filing of an income and expense statement in a dissolution action did not mean that it was evidence considered by the trial court). While Ms. Rhea–Vance's testimonial evidence concerning the note appears to be more in depth than the testimony in the *Cassing* and *Boggs* cases, "the deficiency in [SLMA's] case, the failure in this record to establish production by [SLMA] of the note[s] on which the suit was based, is a technical but critical oversight." *Cassing,* 691 S.W.2d at 515. This exhibit consisting of the notes on which the lawsuit was based could not be considered by the court in making its judgment until it had been offered and admitted into evidence.

■ Point I is valid. Because this evidentiary deficiency is curable upon remand,[5] we reverse and remand to the trial court for retrial, where the promissory notes may be properly offered and admitted into evidence.

### Point II

■ In his second point on appeal, Mr. Holloway alleges that the trial court incorrectly relied on documents purporting to assign the original payees' interests in the promissory notes to SLMA.

---

5. "[W]here a plaintiff has by mistake or inadvertence failed to prove up a claim in a situation where the proof seems to have been available, we have no alternative but to reverse the judgment and remand the case for the reception of additional evidence." *Cass-*

*ing,* 691 S.W.2d at 515–16. "A plaintiff's verdict should be reversed without remand only if the appellate court is convinced that plaintiff could not make a submissible case on retrial." *Boggs,* 917 S.W.2d at 656.

At trial, SLMA introduced its exhibit number five, identified by Ms. Rhea–Vance as a series of five "blanket endorsements."[6] Each blanket endorsement states as follows:

> The undersigned ("Seller"), by execution of this instrument, hereby endorses the attached promissory note which is one of the promissory notes ("the Notes") described in the Bill of Sale executed by Seller in favor of the Student Loan Marketing Association ("Purchaser"). This endorsement is in blank, unrestricted form and without recourse except as provided in paragraph 10 of the Commitment and Loan Sale Agreement dated [ (date each note purportedly sold) ] between Seller and Purchaser.
>
> This endorsement may be effected by attaching either this instrument or a facsimile hereof to each or any of the notes.
>
> [Signed: original payee of note/s]

Mr. Holloway complains that these purported assignments make reference to "attached" promissory notes, but no promissory notes were actually attached to the documents produced at trial. Thus, he claims the documents alleging to evince the assignments do not show that any particular notes allegedly made by Mr. Holloway were assigned to SLMA, so SLMA does not have standing to sue on the notes.

As to the endorsements, Ms. Rhea–Vance testified that the endorsements in exhibit number five are part of Mr. Holloway's file at SLMA. Each endorsement is stored on SLMA's electronic imaging system,[7] apparently separated from the referenced attachments. She described SLMA's document imaging system to the court as follows:

> When a file is imaged, we'll keep the original promissory notes and applications, and [a] lot of times it goes on to – the actual file is put on to a computer system called D–DOT, and then the image can be retrieved, knowing the image type, and viewed. If they're not promissory notes or applications or disbursement checks, then the file itself is often destroyed and we only view the copies. And that's based off the requirements from our guarantors for originality of documentation. ... Once it's in the imaging system [a document cannot be altered].

Mr. Holloway's claim of error pertains to the trial court's admission of the endorsements as evidence of the assignments to SLMA. As set forth above, Ms. Rhea–Vance testified about SLMA's method of storing the documents in its imaging system. She did not destroy the originals herself, nor was she responsible for the imaging. However, she did testify that she personally searched Mr. Holloway's files for the originals and that, despite her best efforts, she was unable to locate them. She also admitted that a person cannot tell what notes are purported to be assigned by looking at the blanket endorsements alone. Yet, she testified that the original endorsements were "not attainable." She said that she searched Mr. Holloway's

---

**6.** The original payees of the promissory notes at issue, each of which a signed blanket endorsement appears for in the legal file, are Boatmen's Hampton Bank, Boatmen's National Bank of St. Louis/Hampton, First American Bank, N.A., Bank One, Merrillville, NA, and Key Bank of Maine.

**7.** Missouri has adopted § 109.120 RSMo Supp.1999, entitled "Records reproduced by photostatic process—costs—marginal releases prohibited," which allows such imaging of business records as follows:

> 1. The head of any business, industry, profession, occupation or calling ... may cause any and all records kept by such ... business to be photographed, microphotographed, photostated or transferred to other material using photographic, video, or electronic processes. ... Such reproducing material shall be of durable material and the device used to reproduce the records shall be such as to accurately reproduce and perpetuate the original records in all details and ensure their proper retention and integrity in accordance with standards established by the state records commission.

original file, the imaging system and microfiche for the originals. She also testified that the imaged copies were in the care, custody and control of SLMA, were made in the ordinary course of SLMA's business dealings, and were made at or near the time the notes were assigned. In addition, she was generally familiar with SLMA's maintenance of the company's records on the computer. As the litigation specialist assigned to Mr. Holloway's account, she was certainly familiar with the specifics of his account.

Mr. Holloway essentially argues that SLMA failed to lay a proper foundation for admission of the endorsements as proof of the assignments. The endorsements can be properly characterized as business records. Regarding the introduction of business records, § 490.680 RSMo 1994 states:

> A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

While Ms. Rhea–Vance testified adequately as to the absence of originals and as to the preparation of the imaged endorsements, she provided no basis for connecting the blanket endorsements to the particular promissory notes at issue in order to evince the assignments of the notes to SLMA. It is unclear whether other evidence was available to prove which notes were assigned. As we remand for other purposes, on remand SLMA will be required to lay an adequate foundation for admission of the endorsements as evidence of the assignments of the promissory notes at issue.

With this in mind, an adequate foundation connecting the blanket endorsements to the promissory notes at issue, thereby showing the assignments of the notes to SLMA, must be introduced on remand for consideration in determining the admissibility of the endorsements.

## Point III

■ In his third point on appeal, Mr. Holloway alleges the trial court erred because SLMA failed to offer evidence of its corporate existence in response to his denial and demand for "strict proof" of its corporate status (capacity to sue) set forth in his answer.

Rule 55.13 [8] states in relevant part:

> When a person desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, the person shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge. When a party so raises such issue, the burden of proof thereon shall be placed upon the opposite party.

SLMA averred in the first paragraph of its petition that it "is a corporation duly organized under and existing by virtue of law." To this, Mr. Holloway averred in his answer, "Defendant denies the allegation contained in paragraph 1 of the First Amended Petition and demands strict proof of the same."

■ The rule regarding a challenge to a party's corporate status is as follows:

> A claim that a corporation lacks the capacity to sue or be sued must be raised in defendant's responsive pleading. A denial in general terms is insufficient to constitute a "specific negative averment" as required by Rule 55.13. A general denial is treated as an admission of the corporate existence and capacity. A proper pleading which raises the issue of corporate capacity should specifically aver why the corporation does not have

---

**8.** All Rule references are to the Missouri Rules of Civil Procedure (1999).

authority, including matters which would be disclosed by a reasonable examination of public records. If made in good faith, a specific denial of the capacity to sue or be sued without supporting particulars may be sufficient to raise the issue; but is subject to being stricken by the court pursuant to a motion for more definite statement, if supporting particulars are not added by amendment.

*Gilmore v. Bi–State Development Agency,* 936 S.W.2d 193, 194 (Mo.App. E.D.1996) (citing *Petry Roofing Supply, Inc. v. Sutton,* 839 S.W.2d 337, 341 (Mo.App. E.D. 1992)).

Mr. Holloway's demand of "strict proof" is not sufficient to constitute a specific negative averment. He pled no particulars as to why SLMA allegedly lacks capacity. Although there is a good faith exception, we fail to discern good faith in this specific denial without supporting particulars, especially given the fact that SLMA (also known as "Sallie Mae") is so well known. *See Student Loan Marketing Ass'n v. Raja,* 914 S.W.2d 825, 827 (Mo. App. W.D.1996) (explaining that "SLMA is a congressionally-chartered private corporation which acts as a secondary market for the student loan industry"). Thus, Mr. Holloway's general denial is treated as an admission of SLMA's corporate status.

Point III is denied.

## Point IV

In his fourth point on appeal, Mr. Holloway alleges that some of SLMA's exhibits violated the best evidence rule, because they were photocopies and there was no evidence that the originals were lost, destroyed or otherwise unavailable.

"The [best evidence] rule stated is this: in proving the terms of a writing, where the terms are material, the original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent." *Chevalier v. Director of Revenue,* 928 S.W.2d 388, 391–92 (Mo.App. W.D.

1996) (citing McCormick on Evidence, § 230 (4th ed.1992)). If the original document is required under the rule, "[a] photocopy as secondary evidence is admissible if there is a foundation showing that: '(1) the original is unavailable, (2) the unavailability is not the proponent's fault, and (3) the secondary evidence is trustworthy.' " *Ousley v. Casada,* 985 S.W.2d 757, 758 (Mo. banc 1999) (quoting *State v. Zimmerman,* 886 S.W.2d 684, 691 (Mo.App. S.D. 1994)). The best evidence rule applies only when the terms of the writing itself are in dispute, not simply because a witness with personal knowledge testifies concerning facts also contained in a writing. *Manfield v. Auditorium Bar & Grill, Inc.,* 965 S.W.2d 262, 271 (Mo.App. W.D.1998). "[W]hen complaints concerning ... the 'best evidence rule' are urged, the trial court's broad discretion is subject to reversal only in cases of clear abuse." *Lewis v. Bucyrus–Erie, Inc.,* 622 S.W.2d 920, 925 (Mo. banc 1981).

Mr. Holloway asserts "repayment obligations" and an "agreement for litigation resolution" were wrongly admitted because the documents were duplicates, the contents were in dispute, and therefore the use of duplicates violated the best evidence rule. Ms. Rhea–Vance testified that the repayment obligations spell out the repayment period for each promissory note, that they were mailed to Mr. Holloway and that SLMA owns the originals of the documents. When questioned concerning the fact that they were photocopies, she indicated that she reviewed Mr. Holloway's file with SLMA before appearing in court and, although "[she could] not say that [she] had an original for everyone without reviewing the file again[,] ... there were originals," which she could get at some point. Regarding the "agreement for litigation resolution," she testified that it was also a business record. She stated that the photocopies she brought with her to court were taken from SLMA's imaging system, and she laid an adequate founda-

tion to show that they were business records.

■■■ As to the imaged documents, Ms. Rhea–Vance testified that many of the original documents are destroyed after they have been imaged into the system. Given that documents cannot be altered once they are imaged into the system, the duplicates' trustworthiness has been shown. Given this, it is likely that SLMA can lay an adequate foundation showing that the originals are no longer available thereby allowing the duplicates as secondary evidence on remand. As to the documents she testified originals may exist for, on remand, if the terms of the writing are in dispute, SLMA must properly account for the originals if they are available, or their unavailability must be sufficiently established to allow the trial court to admit the copies.

### Point V

In his fifth and final point on appeal, Mr. Holloway alleges the trial court erroneously awarded SLMA $10,000 in attorney's fees.

■■■ This court considers the trial court an expert in the necessity, reasonableness and value of attorney's fees. *Manfield*, 965 S.W.2d at 268. "The setting of attorney's fees is within the sound discretion of the trial court and should not be reversed unless the award is so arbitrary or unreasonable that it indicates indifference and lack of proper judicial consideration." *Estate of Strauss v. Schaeffer*, 781 S.W.2d 274, 275 (Mo.App.1989) (cases cited therein omitted).

The promissory notes provide for the payment of "reasonable attorney's fees ... necessary for the collection of any amount not paid when due." Accordingly, SLMA requested the trial court assess reasonable attorney's fees against Mr. Holloway, stating in their petition that SLMA "is entitled to recover $23,379.94." At trial, Ms. Rhea–Vance simply testified that SLMA was asking the court for $23,379.94 in at-

torney's fees. Eventually, the court sustained Mr. Holloway's counsel's request that all of her testimony regarding any attorney's fees be stricken due to lack of foundation. Thus, there was no evidence before the court on the issue of reasonable attorney's fees. The court explained to the parties "[it didn't] think the law require[d] absolutely that evidence on the issue of attorney's fees [be presented.] ... The court [could] determine that."

In *Manfield*, this court held that "[i]n calculating the reasonable value of legal services, the trial court 'should consider the time spent, nature and character of services rendered, nature and importance of the subject matter, degree of responsibility imposed on the attorney, value of property or money involved, degree of professional ability required and the result.'" *Manfield*, 965 S.W.2d at 268 (quoting *In re Alcolac, Inc., Litigation*, 945 S.W.2d 459, 461 (Mo.App. W.D.1997)). We need not analyze this point further, because, on remand, the trial court will again have the opportunity to give the matter proper judicial consideration, in light of the above factors.

### Conclusion

Due to evidentiary insufficiencies, including the failure to offer and introduce the promissory notes on which the suit was based, the trial court's judgment is reversed. Because "the proof seems to have been available," the judgment is reversed, and the case is remanded for a new trial in which the evidentiary deficiencies may be remedied. *Cassing*, 691 S.W.2d at 515–16.

ELLIS and LAURA DENVIR STITH, JJ., concur.