Mick BUTTRESS, Appellant,

v.

Jack TAYLOR, Defendant,

and

Lamar Franchising, Inc., Respondent.

No. WD 59026.

Missouri Court of Appeals,
Western District.

Dec. 18, 2001.

David R. Mitchell, Jeffrey R. Clark, Blue Springs, for Appellant.

George E. Kapke, Independence, for Defendant.

Edward M. Dolson, Benjamin K. Byrd, Don R. Lolli, Kansas City, for Respondent.

Before SMITH, P.J., and HOWARD and HOLLIGER, JJ.

EDWIN H. SMITH, Presiding Judge.

Mick Buttress appeals the judgment of the Circuit Court of Jackson County awarding the respondent, Lamar Franchising, Inc., damages on the appellant's injunction bond of $3,836.25 for attorney's fees, which were incurred by the respondent in dissolving a temporary restraining order (TRO) obtained by the appellant against one of the respondent's franchisees, Jack Taylor.[1] The TRO temporarily restrained Taylor from opening a Lamar's franchise in Blue Springs, Missouri. In seeking injunctive relief against Taylor, the appellant alleged that pursuant to the franchise agreement that he had entered into with the respondent, he owned the exclusive rights to open a Lamar's franchise in Blue Springs. The respondent sought and obtained leave from the circuit court to intervene in the appellant's suit for injunction against Taylor.

The appellant raises three points on appeal. In all three points, he attacks the trial court's award of attorney's fees as damages on the injunction bond he had posted in the appellant's action against Taylor. In Point I, he claims that the trial court erred in awarding the respondent attorney's fees of $3,836.25, as damages on the appellant's injunction bond, because, as a matter of law, only an enjoined party can recover damages on an injunction bond in that the respondent was not an enjoined party defendant, but only an intervenor in the underlying suit for injunction. In Point II, he claims that the trial court erred in awarding the respondent attorney's fees of $3,836.25, as damages on the appellant's injunction bond, because, as a matter of law, such an award can only be made for damages incurred in dissolving the injunction in that $1,093.75 of the attorney's fees awarded the respondent was for legal work done by its attorneys in obtaining an assessment of damages on the injunction bond, which was after the TRO was dissolved. In Point III, he claims that the trial court erred in awarding the respondent attorney's fees of $3,836.25, as damages on the appellant's injunction

1. As the Facts, *infra*, reflect, the franchise actually belonged to JMC Enterprises, Inc., of which Taylor was a principal. And, although the appellant's petition for preliminary injunction and TRO named Taylor as the defendant, it sought to restrain Taylor and his "officers, members, agents, servants, employees and attorneys and those persons in active concert or participation with them from opening a Lamar's franchise in Blue Springs, Missouri." Even though we question whether the appellant named the correct party as the defendant in its petition for preliminary injunction and TRO, our disposition of the appeal renders this issue moot.

bond, because the $2,742.50 awarded for attorney's fees incurred in dissolving the TRO was not supported by the record as being reasonable and necessary.

We affirm.

## Facts

On February 20, 1999, the respondent entered into a written franchise agreement with JMC Enterprises, Inc., a corporation in which Jack Taylor is a principal, to open a Lamar's donut franchise in Blue Springs, Missouri. The construction of Taylor's Lamar's franchise was completed later that year, with the grand opening set for November 12, 1999.

On November 3, 1999, the appellant filed a petition seeking a preliminary injunction and TRO in the Circuit Court of Jackson County seeking to enjoin Taylor from opening his Lamar's franchise. On November 4, 1999, without notice to Taylor, the circuit court issued a TRO restraining him from opening his franchise, conditioned on the appellant's posting a $10,000 injunction bond, which he did on November 11, 1999. Later that same afternoon, the appellant's attorney personally served a copy of the TRO on Taylor. Taylor quickly contacted his attorney, Joe Willerth, and the chairman of the board of Lamar Franchising, Inc., Joe Fields, to advise them of the TRO. Fields then contacted local counsel for the respondent, Swanson Midgley, L.L.C., to assist Taylor's attorney in fighting the TRO. An attorney for Swanson Midgley, Edward Dolson, contacted Willerth on November 11, 1999, to discuss what action to take with respect to dissolving the TRO. At that time, it was decided that the respondent's attorneys would take the lead in attempting to dissolve the TRO.

On November 11, 1999, the respondent filed a motion in the circuit court to intervene in the appellant's action against Taylor. At approximately 8:50 a.m. on November 12, 1999, the Honorable William W. Ely held a hearing on the respondent's motion to intervene. At the conclusion of the hearing, Judge Ely granted the respondent's motion and scheduled a hearing for that afternoon on Taylor's motion to dissolve the TRO or, in the alternative, to increase the appellant's bond. The attorneys for Taylor and the respondent appeared for the hearing, but the appellant did not appear in person or by counsel. Judge Ely sustained the motion and dissolved the TRO. Taylor then opened his Lamar's franchise for business on November 13, 1999, one day later than originally planned.

No action was taken on the injunction bond for more than eight months following the dissolution of the TRO. Finally, on July 21, 2000, the respondent filed, in the circuit court, its motion for assessment of damages on the appellant's injunction bond, alleging damages of $5,000. On August 15, 2000, Taylor filed his motion for an assessment of damages. The motions were heard on August 18, 2000. On September 11, 2000, the court entered a judgment on the bond in favor of Taylor and the respondent, awarding Taylor $2,250 in damages for his attorney's fees plus $750 in lost income and profits. The court also awarded the respondent $3,836.25 in damages for the attorney's fees it incurred in dissolving the TRO and for obtaining an assessment of damages on the bond.

This appeal follows.

## Appellant's Jurisdictional Statement

Before addressing the merits of the appellant's claims of error, we first note that his jurisdictional statement does not sub-

stantially comply with Rule 84.04(b).[2]

██ Rule 84.04 sets forth the requirements for filing appellate briefs and provides, in pertinent part:

(a) **Contents.** The brief for appellant shall contain:

. . .

(2) A concise statement of the grounds on which jurisdiction of the review court is invoked;

. . .

(b) **Jurisdictional Statement.** Bare recitals that jurisdiction is invoked "on the ground that the construction of the Constitution of the United States or of this state is involved" or similar statements or conclusions are insufficient as jurisdictional statements. The jurisdictional statement shall set forth sufficient factual data to demonstrate the applicability of the particular provision or provisions of Article V, Section 3, of the Constitution whereon jurisdiction is sought to be predicated. . . .

The appellant's jurisdictional statement reads:

This is an appeal of a final judgment, entered by the Circuit Court of Jackson County, at Independence. The final judgment abused the discretion of that Court. The notice of appeal was timely. This case does not fall within the exclusive mandatory jurisdiction of the Supreme Court of Missouri pursuant to the provisions of Article V, Section 3, of the Constitution of Missouri. Therefore, this case is within the jurisdiction of the Missouri Court of Appeals.

This case arose in the Circuit Court of Jackson County. Therefore, venue lies in the Western District, pursuant to Section 477.060, Revised Statutes of Missouri.

The appellant's jurisdictional statement does not comply with Rule 84.04(b) because: (1) it is a bare recital of our jurisdiction being invoked under Article V, Section 3 of the Missouri Constitution in that it does not set forth "sufficient factual data" as required by Rule 84.04(b); and (2) it does not clearly identify what final, appealable judgment of the Circuit Court of Jackson County, Missouri, is being appealed. *Robin Farms, Inc. v. Bartholome*, 989 S.W.2d 238, 244–45 (Mo.App.1999). In fact, the appellant's jurisdictional statement even fails to distinguish whether he is appealing from a civil or criminal judgment.

██ Although the appellant's violation of Rule 84.04(b) is substantial and would constitute a sufficient basis upon which to dismiss his appeal, we decline to do so because our jurisdiction is evident on the face of the appellant's brief and the record. *Id.* at 245 (citation omitted). And, given our preference to dispose of cases on the merits whenever possible, rather than to dismiss them for deficiencies in the jurisdictional statement, we will review the appellant's claims, *ex gratia. Id.* We would admonish appellant's counsel, however, that we will be less willing to review in the future under similar circumstances such that counsel should make every effort to comply with Rule 84.04 henceforth.

**I.**

██ In Point I, the appellant claims that the trial court erred in awarding the respondent attorney's fees of $3,836.25, as damages on the appellant's injunction bond, because, as a matter of law, only an enjoined party defendant can recover dam-

---

**2.** All rule references are to the Missouri Rules of Civil Procedure (2001), unless otherwise indicated.

ages on an injunction bond in that the respondent was not an enjoined party defendant, but only an intervenor in the underlying suit for injunction. In claiming as he does in this point, the appellant is not contending that the recovery of attorney's fees is not permitted as an award of damages on an injunction bond. Rather, he is contending that an award of attorney's fees to the respondent was in error because Missouri law does not allow such an award to someone other than an enjoined party defendant, citing *Collins & Hermann, Inc.–Welsbach & Assoc. Div. v. St. Louis County,* 684 S.W.2d 324, 326 (Mo. banc 1985) and *Kahn v. Royal Banks of Mo.,* 790 S.W.2d 503, 511 (Mo.App.1990). In *Collins,* the Missouri Supreme Court recognized that, pursuant to §§ 526.070,[3] 526.200 and 526.210, damages are recoverable on an injunction bond in an "amount necessary to compensate a defendant for losses incurred that are the actual, natural and proximate result of the restraint, while it is in force." 684 S.W.2d at 325–26 (citations omitted). The court also recognized that such an award of damages, as an exception to the general rule that an unsuccessful litigant incurs no liability for the legal expenses of the prevailing party, may include an award of reasonable attorney's fees for necessary services rendered to lift the restraint. *Id.* at 326 (citations omitted).

■ "Our review of a court-tried case is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976)." *JCBC, L.L.C. v. Rollstock, Inc.,* 22 S.W.3d 197, 200 (Mo. App.2000) (citation omitted). As such, we will affirm the trial court's award of damages on an injunction bond unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

In relying on *Collins* in this point, the appellant points to the fact that the Court, in holding that the "measure of damages recoverable on an injunction bond is the amount necessary to compensate a *defendant* for losses incurred that are the actual, natural and proximate result of the restraint, while it is in force," specifically referred to "a defendant," 684 S.W.2d at 326 (emphasis added), arguing that the Court's reference was meant to restrict recovery on an injunction bond to an enjoined party defendant. Thus, the appellant is essentially arguing that the legislature in §§ 526.070, 526.200 and 526.210, did not intend to authorize an award of damages on an injunction bond to anyone other than an enjoined party defendant for losses resulting from a wrongfully-issued restraint. The appellant's reliance on *Collins* is misplaced.

The court in *Collins* was not called upon to address the issue before us. Rather, the issue there was simply whether St. Louis County, the enjoined party defendant, could recover attorney's fees on the injunction bond of the appellant where the County had incurred no actual fees, inasmuch as it was represented by a salaried deputy county counselor. Thus, the Court's reference to "a defendant" in its decision was not meant to limit the class of parties that could recover on an injunction bond, as the appellant contends, but was simply referencing the class of parties to which the defendant County belonged.

The appellant's reliance on *Kahn* is also misplaced. As was the case in *Collins,* the Eastern District of this court in *Kahn* did not address the issue at bar. In *Kahn,* the court addressed the issue of whether a lender could recover as damages on an injunction bond the principal and interest due on a defaulted note, which were al-

**3.** All statutory references are to RSMo 2000, unless otherwise indicated.

leged to have resulted from having been temporarily enjoined from foreclosing on the collateral securing the note. 790 S.W.2d at 511. Our research discloses that not only do *Collins* and *Kahn* fail to address the issue of whether a party, other than an enjoined party defendant, may recover attorney's fees as damages on an injunction bond, but that no Missouri case has decided the issue. Hence, this would appear to be a case of first impression, which turns on an interpretation of the implicated statutes authorizing an award of attorney's fees as damages on an injunction bond.

■ Neither § 526.200, governing the procedure for assessing damages on an injunction bond, nor § 526.210, providing for the enforcement of a judgment for damages against the obligors on an injunction bond, address the issue presented. The respondent contends, however, that § 526.070 does. It reads:

> No injunction, unless on final hearing or judgment, shall issue in any case, except in suits instituted by the state in its own behalf, until the plaintiff, or some responsible person for him, shall have executed a bond with sufficient surety or sureties to the other party, in such sum as the court or judge shall deem sufficient to secure the amount or other matter to be enjoined, and *all damages that may be occasioned by such injunction to the parties enjoined, or to any party interested in the subject matter of the controversy,* conditioned that the plaintiff will abide the decision which shall be made thereon, and pay all sums of money, damages and costs that shall be adjudged against him if the injunction shall be dissolved. In lieu of the bond the plaintiff may deposit with the court such sum, in cash, as the court may require, sufficient to secure such amounts.

§ 526.070 (emphasis added); *see also* Rule 92.02(d). The respondent argues that the language of the statute that references "any party interested in the subject matter of the controversy," should be interpreted as allowing any interested party in the subject matter of the controversy, including an intervenor, to recover the damages it incurred as the result of a wrongfully-issued restraint, including attorney's fees.

■ "Statutory construction is a matter of law, not a matter of discretion ... and no deference is given to the trial court's determination." *Sloan v. Bankers Life & Cas. Co.,* 1 S.W.3d 555, 561 (Mo. App.1999) (citations omitted). " 'The primary rule of statutory construction is to ascertain the intent of the lawmakers by construing words used in the statute in their plain and ordinary meaning.' " *Am. Healthcare Mgmt., Inc. v. Dir. of Revenue,* 984 S.W.2d 496, 498 (Mo. *banc* 1999) (*quoting Hyde Park Hous. P'ship v. Dir. of Revenue,* 850 S.W.2d 82, 84 (Mo. *banc* 1993)). Courts lack the authority to read into a statute a legislative intent that is contrary to the intent made evident by giving the language employed in the statute its plain and ordinary meaning. *Hunter v. County of Morgan,* 12 S.W.3d 749, 757 (Mo.App.2000). In the absence of any statutory definition, words used in statutes are to be given their plain and ordinary meaning. *Am. Healthcare Mgmt.,* 984 S.W.2d at 498. In interpreting a statute, we are required to give meaning to each word, clause, and section of the statute whenever possible. *Spradlin v. City of Fulton,* 982 S.W.2d 255, 262 (Mo. *banc* 1998). Using these principles of statutory interpretation to guide us, we turn to the statute in question.

■ The respondent argues that in including in § 526.070 the language "or to any party interested in the subject matter of the controversy," the legislature intend-

ed that interested parties, as well as enjoined party defendants, would be allowed to recover on an injunction bond, provided they could show that they suffered a loss incurred as the actual, natural and proximate result of the restraint. We agree. To interpret § 526.070 as the appellant would have us interpret it would mean that the language of the statute, "the parties enjoined" and "any party interested," was referring to the same parties such that the added language as to "any party interested" was mere surplusage and was included for no reason. " 'Such a construction is not favored.'" *Millsap v. Quinn,* 785 S.W.2d 82, 84 (Mo. *banc* 1990) (*quoting Boone County Court v. State of Mo.,* 631 S.W.2d 321, 325 (Mo. *banc* 1982)). "In interpreting statutes we are required to give meaning to all the terms used." *Habjan v. Earnest,* 2 S.W.3d 875, 882 (Mo.App. 1999) (citation omitted). Giving each and every term of the language in question of § 526.070 its plain and ordinary meaning, it is clear to us that the legislature intended for an injunction bond to secure not only damages incurred by an enjoined party defendant, but also damages incurred by a party interested in the subject matter of the controversy.

Given our interpretation of § 526.070, that any interested party in the subject matter of the controversy may recover damages incurred as the result of a wrongfully-issued restraint, the respondent would be allowed to recover its attorney's fees as damages on the injunction bond, provided that it is an "interested party" for purposes of the statute. In that regard, we note that an "interested party," for purposes of § 526.070, is neither defined in that section nor anywhere else within Chapter 526 nor has any appellate court expressly interpreted that phrase in the context of that statute. However, as discussed in *Collins, supra,* the Supreme Court of Missouri, in interpreting § 526.070, held that a party may collect damages on an injunction bond "for losses incurred that are the actual, natural and proximate result of the restraint, while it is in force," which included an award of attorney's fees. 684 S.W.2d at 326 (citations omitted). Logically then, based upon *Collins,* any party to the suit for injunction, whether an enjoined party or not, who incurs a loss as the actual, natural and proximate result of the restraint being issued would be considered an interested party in the controversy for purposes of § 526.070.

Here, there is no question that the respondent-intervenor suffered a pecuniary loss as the actual, natural and proximate result of the TRO being granted to the appellant against Taylor. As a result of being allowed to intervene in the suit as an interested party under Rule 52.12, which the appellant does not challenge on appeal, there is no question that the respondent incurred attorney's fees to protect the interests it asserted for intervention in the underlying suit for injunction. As such, the respondent's attorney's fees were incurred as the actual, natural and proximate result of the restraint such that it was an interested party for purposes of § 526.070.

Point denied.

## II.

In Point II, the appellant claims that the trial court erred in awarding the respondent attorney's fees of $3,836.25, as damages on the appellant's injunction bond, because, as a matter of law, such an award can only be made for damages incurred in dissolving the injunction in that $1,093.75 of the attorney's fees awarded the respondent was for legal work done by its attorneys in obtaining an assessment of damages on the injunction bond, which oc-

curred after the TRO was dissolved. Our review in this point is the same as that in Point I. We will affirm the trial court's award of damages unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32.

▮ In contending as he does in this point, the appellant does not point to any provision of §§ 526.070, 526.200 or 526.210 limiting the recovery of damages on an injunction bond to those losses which occurred at a time prior to the restraint being lifted. And, in fact, no such limitation can be found, expressly or impliedly. Rather, the appellant relies on the language found in *Collins* that the "measure of damages recoverable on an injunction bond is the amount necessary to compensate a defendant for losses incurred that are the actual, natural and proximate result of the restraint, *while it is in force.*" 684 S.W.2d at 326 (emphasis added). Seizing on the "while it is in force" language of the opinion, the appellant argues that the Court clearly intended to limit damages recoverable on an injunction bond to those actually incurred prior to the restraint being lifted, such that the respondent's attorney's fees incurred for work done in obtaining an assessment of damages after the TRO was lifted were not recoverable. The appellant's reliance on *Collins* is once again misplaced in that the Court there never addressed the issue presented in this point. As discussed, *supra,* the issue addressed in *Collins* was simply whether the County could collect attorney's fees for

a salaried county counselor who worked on lifting the restraint. *Id.* at 325.

Section 526.070 provides, in pertinent part, that the requisite injunction bond must be in an amount sufficient to "secure the amount or other matter to be enjoined, and *all damages that may be occasioned* by such injunction...." (Emphasis added.) Giving the term "all," as used in the phrase in question, its plain and ordinary meaning, we read it as expressing a legislative intent to permit recovery for any and all damages occasioned by the injunction, including attorney's fees, regardless of whether the damages in question accrued prior to or after the lifting of the restraint. The language of the statute, as well as the Court's decision in *Collins,* makes it clear that the lynchpin in determining recovery on an injunction bond is not when the losses are incurred, as the appellant contends, but whether they are the "actual, natural and proximate result of the restraint," as held in *Collins.*

▮ As stated in *Mechanic v. Gruensfelder,* 461 S.W.2d 298, 309 (Mo.App. 1970), the purpose of requiring an injunction bond is "to protect parties who sustain damage as a result of compliance with [an injunction] later determined to have been illegally or improperly issued." Our interpretation of § 526.070 as to whether attorney's fees incurred in obtaining an assessment of damages after the restraint is lifted are recoverable is in keeping with that purpose. As this court stated in *Hernandez v. State Bd. of Regis. for the Healing Arts,* 936 S.W.2d 894, 902 (Mo.App. 1997),[4] in which the issue was almost iden-

4. The dispute in *Hernandez* was whether a person who filed a complaint with the Administrative Hearing Commission (AHC) against the State Board of Registration for the Healing Arts for denying his application for a medical license could be awarded the attorney's fees he incurred in filing a fee suit to

collect the attorney's fees he incurred in the underlying agency proceedings, as authorized by § 536.087. 936 S.W.2d at 901. This court held that the AHC "erred in finding that § 536.087 does not allow for an award of attorney's fees incurred in seeking attorney's

tical to the issue presented here, except the statute authorizing the recovery of fees and expenses was § 536.087 rather than § 526.070, refusing to award attorney's fees for the time spent in obtaining attorney's fees, as authorized by statute, would thwart the purpose of the statute in that under such circumstances, "[p]revailing parties may choose not to vindicate their rights against [the losing parties] if they believe that the cost of litigating fee disputes would equal or exceed the cost of litigating the merits of the underlying cases." Likewise, in the case of a wrongfully-issued injunction, if a party suffered a loss as a result thereof and was prohibited from recovering his or her attorney's fees incurred in seeking an assessment of damages on the injunction bond for the loss sustained, then he or she might be inclined not to seek an assessment of damages on the bond, believing that the cost of litigating the fee dispute might equal or exceed the damages he or she had incurred in defending the suit for injunction.

Point denied.

## III.

In Point III, the appellant claims that the trial court erred in awarding the respondent attorney's fees of $3,836.25, as damages on the appellant's injunction bond, because the $2,742.50 awarded for attorney's fees incurred in dissolving the TRO was not supported by the record as being reasonable and necessary. Specifically, the appellant claims that it was neither reasonable nor necessary for the re-

spondent to incur attorney's fees for the work of three attorneys for a combined total of 17.5 hours to dissolve a TRO, which did not involve any complex legal issues.[5] Thus, the question is whether the record was sufficient for the trial court to find that the attorney's fees incurred by the appellant in dissolving the TRO were reasonable and necessary.

When reviewing a trial court's award of attorney's fees, we recognize that the trial court is considered an expert in the necessity, reasonableness, and the value of such attorney's fees. *Manfield v. Auditorium Bar & Grill, Inc.*, 965 S.W.2d 262, 268 (Mo.App.1998). Thus, in order to reverse a trial court's award of attorney's fees, we must find that the trial court abused its discretion. *Id.* "An abuse of discretion is established only when the award is so 'clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice.'" *Leone v. Leone*, 917 S.W.2d 608, 616 (Mo.App.1996) (*quoting Meservey v. Meservey*, 841 S.W.2d 240, 248 (Mo.App. 1992)).

"In calculating the reasonable value of legal services, the trial court 'should consider the time spent, nature and character of services rendered, nature and importance of the subject matter, degree of responsibility imposed on the attorney, value of property or money involved, degree of professional ability required and the result.'" *Manfield*, 965 S.W.2d at 268 (*quoting In re Alcolac, Inc., Litigation*,

---

fees for an underlying agency proceeding or civil action." *Id.* at 902.

5. Although the appellant's point relied on apparently challenges the reasonableness of the trial court's total award of $3,836.25 in attorney's fees to the respondent, his argument only addresses the reasonableness of the attorney's fees incurred in dissolving the TRO,

namely, $2,742.50. Since the appellant's argument did not address the court's award of $1,093.75 to the respondent for attorney's fees it incurred in collecting damages on the bond, any claim of error as to the reasonableness of these fees is deemed abandoned. *Coleman v. Gilyard*, 969 S.W.2d 271, 273 (Mo. App.1998).

945 S.W.2d 459, 461 (Mo.App.1997)). Applying those factors to the record in our case, we believe that the evidence was sufficient to support the trial court's finding that the attorney's fees incurred by the respondent in dissolving the TRO against Taylor were reasonable and necessary.

At the hearing on the respondent's motion for an award of attorney's fees as damages on the injunction bond, the respondent's lead attorney, Edward Dolson, testified as to the services rendered by his law firm, Swanson Midgley, L.L.C., to the respondent in intervening in the appellant's action below and dissolving the TRO against Taylor. The respondent introduced at the damages hearing an itemized billing statement it received from Swanson Midgley dated December 13, 1999, which detailed the services rendered by Dolson, and two other attorneys assigned to the case, Don Lolli and Benjamin Byrd, on November 11 and 12, 1999. The statement reflected that over this two-day span in November, Dolson billed the respondent for nine hours of work at an hourly rate of $180. According to the statement, the nine hours were billed for conferring with the respondent; conferring with Taylor's attorney; discussing the case with Lolli and Byrd; researching Missouri law; arguing the motion to intervene; preparing and arguing the motion to dissolve the TRO; and drafting a final order. Lolli, a partner specializing in litigation at Swanson Midgley, billed the respondent for five hours of time spent working on the case on November 11 and 12, 1999, at an hourly rate of $165. The billing statement indicated that Lolli's services included: conferring with Dolson and Byrd; conferring with the respondent; conferring with Taylor's attorney; reviewing the TRO; and attending the injunction hearing. Byrd, an associate with Swanson Midgley, billed 3.5 hours to the respondent at an hourly rate of $85 during this same two-day period for time spent conferring with Dolson and Lolli; researching Rule 92.02; and preparing the motion to dissolve the TRO.

The appellant contends that the time billed by the respondent's attorneys was unreasonable and unnecessary when compared to the six hours billed by Taylor's attorney over the same two-day period. However, Dolson testified at the motion hearing that his law firm took the lead in researching and preparing the motion to dissolve the restraining order, even though Taylor filed the motion with the court. And, although we cannot say that this was a difficult case filled with complex legal issues, the record would reflect that the respondent's attorneys spent a significant amount of time researching and drafting the motions to intervene and dissolve the restraining order, and arguing the motions in court. All of this was done while remaining in close contact with the respondent and Taylor's counsel.

The value of the property and money involved in this dispute was significant. The record reflects that if the restraining order would not have been dissolved, then the respondent would have lost the royalties to which it was entitled under its franchise agreement with Taylor, based on gross sales. In that regard, Dolson testified at the hearing on the respondent's motion for damages on the bond that he believed that the franchise agreement obligated Taylor to pay the respondent royalties in an amount equal to six percent of his gross sales. In addition, if the TRO was not dissolved, the respondent was potentially facing a lawsuit by Taylor. Thus, the value and importance of dissolving the TRO were clearly significant from the respondent's perspective.

After reviewing the record in detail, we cannot say that the trial court abused its discretion in awarding $2,742.50 in attor-

ney's fees to the respondent as damages on the appellant's injunction bond for legal work done in dissolving the TRO. The record was sufficient for the trial court to find that the award was reasonable and necessary under all the circumstances in the case in light of the factors set forth in *Manfield.*

Point denied.

### Conclusion

The circuit court's judgment awarding the respondent $3,836.25 in attorney's fees as and for damages on the appellant's injunction bond is affirmed.

HOWARD and HOLLIGER, JJ., concur.