MISSOURI COURT OF APPEALS
 WESTERN DISTRICT

 THOMAS DUBUC, )
 ) WD84171
 Appellant, )
 v. ) OPINION FILED:
 )
 TREASURER OF THE STATE OF ) March 8, 2022
 MISSOURI CUSTODIAN OF THE )
 SECOND INJURY FUND, )
 )
 Respondent. )

 A PPEAL FROM THE L ABOR AND I NDUSTRIAL R ELATIONS C OMMISSION

 Before Division Two:
 Alok Ahuja, P.J., Edward R. Ardini, Jr. and Janet Sutton, JJ.

 Mr. Thomas Dubuc appeals a Labor and Industrial Relations Commission

(Commission) determination, on remand from this Court, that he did not prove his

qualifying preexisting disabilities aggravated or accelerated a subsequent work -

related injury, thus reversing a prior award of permanent total disability benefits

under the Second Injury Fund. Mr. Dubuc claims that the Commission abused its

discretion in denying a motion to conduct additional discovery and submit additional

evidence, because our remand did not require new factual findings solely on the

existing record. He also asserts Commission error in finding that Mr. Dubuc did not

establish a qualifying “medically documented” preexisting disability under section
287.220.3 1 and failing to find him permanently and totally disabled (PTD) in that the

Commission misinterpreted and misapplied the applicable statutory requirements. We

reverse and remand.

 Mr. Dubuc was a fiber cable installer when he fell off a ladder in October 2015

injuring a wrist, kidneys, and low back, and was no longer able to work. An

administrative law judge (ALJ) heard Mr. Dubuc’s workers’ compensation claim in

June 2018 and, applying section 287.220.2, denied Second Injury Fund benefits after

finding that he failed to sustain his burden of proving that he was PTD as the result of

that work-related accident and injuries, combined with his preexisting disabilities.

Rather, the ALJ found that the injuries sustained in October 2015 were alone

sufficient to render him PTD. The Commission reversed in an April 2019 split

decision that also applied the legal standard under section 287.220.2 and awarded Mr.

Dubuc lifetime weekly PTD benefits of $879.03. The Second Injury Fund appealed

the Commission award. We reversed and remanded, ruling that Mr. Dubuc was

required instead, under a Missouri Supreme Court ruling filed about two months after

the Final Award, 2 to meet the standards set forth in section 287.220.3 to prove his

claim. Dubuc v. Treasurer of State-Custodian of Second Injury Fund, 597 S.W.3d

372, 374 (Mo. App. W.D. 2020) (Dubuc I). We recognized that section 287.220.3

1
 Statutory references are to RSMo (2000 & 2013 Supp.), unless otherwise indicated.
2
 Cosby v. Treasurer of State-Custodian of Second Injury Fund, 579 S.W.3d 202 (Mo. banc 2019).
Note that Cosby has been characterized as the resolution of a “conflict between subsections 2 and 3
of section 287.220.” Coffer v. Treasurer of State-Custodian of Second Injury Fund, 598 S.W.3d 909,
910 (Mo. App. S.D. 2020). We observed that Cosby and case law controlling before Mr. Dubuc’s
Second Injury Fund claim was heard and decided reached “diametrically opposed conclusions
regarding the intended meaning of sections 287.220.2 and .3, and cannot be reconciled.” Dubuc v.
Treasurer of State-Custodian of Second Injury Fund, 597 S.W.3d 372, 380 (Mo. App. W.D. 2020)
(Dubuc I).

 2
imposed a more “strident standard” on Second Injury Fund claimants. Id. at 384.

The Second Injury Fund alleged that the evidence of record failed to establish the

requirements of section 287.220.3 in certain respects. Id. at 383. 3 We instructed the

Commission to address the following matters:

 [W]hich (if any) of [Mr.] Dubuc’s preexisting disabilities were
 medically documented preexisting disabilities equaling a minimum of
 fifty weeks of permanent partial disability compensation according to
 the medical standards that are used in determining such compensation.

 ***

3
 Section 287.220.3 states in relevant part:

 (1) All claims against the second injury fund for injuries occurring after January 1,
 2014, and all claims against the second injury fund involving a subsequent
 compensable injury which is an occupational disease filed after January 1, 2014,
 shall be compensated as provided in this subsection.
 (2) No claims for permanent partial disability occurring after January 1, 2014, shall
 be filed against the second injury fund. Claims for permanent total disability
 under section 287.200 against the second injury fund shall be compensable only
 when the following conditions are met:
 (a) a. An employee has a medically documented preexisting disability equaling a
 minimum of fifty weeks of permanent partial disability compensation
 according to the medical standards that are used in determining such
 compensation which is:
 (i) A direct result of active military duty in any branch of the United
 States Armed Forces; or
 (ii) A direct result of a compensable injury as defined in section 287.020;
 or
 (iii) Not a compensable injury, but such preexisting disability directly and
 significantly aggravates or accelerates the subsequent work-related
 injury and shall not include unrelated preexisting injuries or
 conditions that do not aggravate or accelerate the subsequent work -
 related injury; or
 (iv) A preexisting permanent partial disability of an extremity, loss of
 eyesight in one eye, or loss of hearing in one ear, when there is a
 subsequent compensable work-related injury as set forth in
 subparagraph b of the opposite extremity, loss of eyesight in the other
 eye, or loss of hearing in the other ear; and
 b. Such employee thereafter sustains a subsequent compensable work -related
 injury that, when combined with the preexisting disability, as set forth in
 items (i), (ii), (iii), or (iv) of subparagraph a. of this paragraph, results in a
 permanent total disability as defined under this chapter; . . .

§ 287.220.3(1) – (2). As noted in Dubuc I, while the Second Injury Fund was established to
encourage employers to hire workers with preexisting disabilities by not making them fully
responsible for all the consequences of a primary workplace injury, the Legislature amended it when
the Fund was insolvent to limit those workers eligible for benefits. Dubuc I, 597 S.W.3d at 379 n.7.

 3
 [W]hether [Mr.] Dubuc’s qualifying preexisting disabilities (if any)
 “directly and significantly aggravate[d] and accelerate[d] the subsequent
 work-related injury” [Mr.] Dubuc suffered on October 30, 2015, a more
 strident standard of eligibility than the standard described in section
 287.220.2.

 ***

 [W]hether [Mr.] Dubuc’s qualifying preexisting disabilities (if any)
 were “unrelated preexisting injuries or conditions that do not aggravate
 or accelerate the subsequent work-related injury.”

Id. at 384.

 Noting that this Court cannot make factual findings in reviewing a

Commission determination, we stated, “These determinations will require the

Commission to consider all the evidence and to make additional factual findings

before applying the correct legal standard to the facts.” Id. In conclusion, we

remanded the matter “to the Commission with instructions to apply the proper legal

standards described in section 287.220.3 to the evidence to determine whether [Mr.]

Dubuc has sustained his burden to establish the right to an award of permanent total

disability benefits from the Fund.” Id. We did not call for the Commission to base

its findings on the existing record.

 Mr. Dubuc filed a motion to conduct additional discovery, submit additional

evidence, and submit supplemental briefs. Mr. Dubuc actually submitted the new

expert report and a request to depose the vocational expert to identify what additional

fact findings would entitle him to prevail on the Second Injury Fund claim under the

requirements of section 287.220.3. The Commission cited a rule 4 that allows the

hearing of additional evidence only “upon the ground of newly discovered evidence

4
 M O . C ODE R EGS . A NN ., tit. 8 § 20-3.030 (2019).

 4
which with reasonable diligence could not have been produced at the hearing before

the administrative law judge,” and a divided Commission denied the requested

additional discovery and additional evidence. The Commission expressly based the

ruling, however, on its interpretation of this Court’s remand order “as specifically

instructing the Commission to make additional factual findings . . . based on the

evidence in the record.” In this regard, the Commission stated, “Because employee’s

request to conduct additional discovery and submit additional evidence is contrary to

the court’s expressed instructions and mandate, we deny this part of employee’s

Motion.” Still, the Commission permitted the parties to file supplemental briefs.

 On the merits, a divided Commission found no Second Injury Fund liability.

The Commission determined that Mr. Dubuc’s “only alleged preexisting disabilities

that arguably reached the fifty-week minimum outlined in § 287.220.3 consisted of

multiple alleged hernia repairs and Factor V Leiden mutation combined with

anticoagulation.” 5 According to the Commission, record evidence about Mr. Dubuc ’s

hernias, the last of which was repaired in the mid-1990s, consisted of medical records

and experts whose inconsistencies reflected a reliance on self-reports. It stated, “The

absence of any direct evidence of employee’s alleged hernia repairs fails to satisfy

the requirement of § 287.220.3 that an employee’s preexisting disability be

‘medically documented.’” Thus, the Commission excluded the hernia repairs from

consideration in determining Second Injury Fund liability.

5
 This mutation affects a clotting factor in the bl ood. Both parties agreed that Mr. Dubuc’s expert
had rated the preexisting hernias and blood condition at 92 and 100 weeks, respectively, thus
rendering them the only preexisting disabilities in evidence that could qualify as preexisting
disabilities under subsection 287.220.3. See Dubuc I, 597 S.W.3d at 383 n.11.

 5
 As to the Factor V Leiden mutation and chronic anticoagulation, evaluated by

Mr. Dubuc’s expert, Dr. Mitchell Mullins, at 25% of the body as a whole and

calculated at 100 weeks, the Commission did not find sufficient evidence that this

disorder aggravated and accelerated Mr. Dubuc’s subsequent work injury. 6 The

Commission concluded, therefore, “as a factual matter,” that Mr. Dubuc had failed to

establish any medically documented disability equaling a minimum of 50 weeks

“permanent partial disability according to medical standards used in determining

compensation and which directly and significantly aggravated and accelerated ” the

October 2015 primary injury. Mr. Dubuc timely filed this appeal, which was briefly

stayed in light of a similar case pending before the Missouri Supreme Court.

 Legal Analysis

Commission’s Interpretation of the Remand Order

 In the first point, Mr. Dubuc claims that the Commission erred in not granting

his motion to conduct additional discovery and submit additional evidence. He

argues that our remand did not limit the Commission’s factual determinations to the

existing record, and it has the authority to grant additional discovery. Contending

that the motion complied with regulatory requirements, Mr. Dubuc states that it

6
 Reviewing the record evidence, the Commission stated:

 T[]here is no evidence in the record that this disorder aggravated and accelerated
 employee’s subsequent work injury other than Dr. Mullins’[s] generic deposition
 testimony, elicited by employee’s attorney, that all of employee’s preexisting
 conditions significantly aggravated his October 10, 2015 [sic], work injury. Dr.
 Mullins’[s] deposition testimony is inconsistent with his September 1, 2016, report,
 addressing “second injury fund concerns.” Dr. Mullins’[s] September 1, 2016, report
 specifically omits reference to employee’s Factor V Leiden deficiency and chronic
 anticoagulation in discussing synergism between employee’s October 30, 2015,
 primary injury and his preexisting disabilities.

(footnote omitted).

 6
should have been granted, and the Commission’s failure to do so “when the burden of

proof had changed constitutes a denial of due process and an abuse of the

Commission’s discretion.” 7

 Section 287.490.1 controls our review of the Final Award:

 The court, on appeal, shall review only questions of law and may
 modify, reverse, remand for rehearing, or set aside the award upon any
 of the following grounds and no other:
 (1) That the commission acted without or in excess of its powers;

 (2) That the award was procured by fraud;

 (3) That the facts found by the commission do not support the
 award;

 (4) That there was not sufficient competent evidence in the
 record to warrant the making of the award.

 While we defer to the Commission’s factual findings, “‘we review
 issues of law, including the Commission’s interpretation and application
 of the law, de novo.’” Nivens v. Interstate Brands Corp., 585 S.W.3d
 825, 831 (Mo. App. W.D. 2019) (quoting Lawrence v. Treasurer of State-
 Custodian Second Injury Fund, 470 S.W.3d 6, 12 (Mo. App. W.D.
 2015)).

Dubuc I, 597 S.W.3d at 377. “Article V, section 18 of the Missouri constitution

provides for judicial review of the [C]ommission’s award to determine whether the

award is ‘supported by competent and substantial evidence upon the whole record. ’”

Jackson Cnty. v. Earnest, 540 S.W.3d 464, 469 (Mo. App. W.D. 2018) (quoting

Hampton v. Big Boy Steel Erection, 121 S.W.3d 220, 222 (Mo. banc 2003). We do

not, however, “‘substitute our judgment on issues of fact where the Commission was

7
 The Second Injury Fund argues that point one is multifarious as it contains more than one allegation
of Commission error. We do not interpret the point as multifarious, but would have considered it on
the merits in any event in light of our preference to address each claim on the merits. See Cityview
Real Est. Servs., LLC v. K.C. Auto Panel, Inc., 576 S.W.3d 187, 191 (Mo. App. W.D. 2019).

 7
within its powers, even if we would arrive at a different initial conclusion.’” Id.

(quoting Hampton, 121 S.W.3d at 223). Still, an award is not supported by competent

and substantial evidence “in the rare case when [it] is contrary to the overwhelming

weight of the evidence.” Id. (quoting Hampton).

 We did not specify when remanding the case that the new factual findings be

based on the existing record. We simply ordered the Commission to consider “all of

the evidence.” 8 Dubuc I, 597 S.W.3d at 384. The premise therefore of the

Commission’s ruling on the motion to conduct additional discovery and submit

additional evidence was erroneous and contrary to our mandate. Its ruling therefore

was not undertaken within its powers.

 In light of the Commission’s regulatory authority to grant a motion to submit

additional evidence, we must therefore determine whether it “acted arbitrarily or

abused its discretion” when denying the motion. Gander v. Shelby Cnty., 933 S.W.2d

892, 895 (Mo. App. E.D. 1996), overruled on other grounds by Hampton. A

commission ruling constitutes an abuse of discretion “if it is shown that the ruling is

clearly against the logic of the circumstances, so arbitrary and unreasonable as to

shock the sense of justice, and lacking careful consideration.” Copeland v. Thurman

Stout, Inc., 204 S.W.3d 737, 745 (Mo. App. S.D. 2006) (citation omitted).

 Under our code of state regulations, the submission and hearing of additional

evidence is limited to “the ground of newly discovered evidence which with

reasonable diligence could not have been produced at the hearing before the

8
 Compare our remand instruction with that of the Missouri Supreme Court in Treasurer of State-
Custodian of Second Injury Fund v. Parker, 622 S.W.3d 178, 183 (Mo. banc 2021) (remanding for
new factual findings “on the record already made before the ALJ.”). We note that this was not a
holding in Parker, merely an instruction on remand.

 8
administrative law judge.” M O . C ODE R EGS . A NN ., tit. 8 § 20-3.030(2)(A) (2019).

The rule also states, “As a matter of policy, the commission is opposed to the

submission of additional evidence except where it furthers the interests of justice. ”

 M O . C ODE R EGS . A NN ., tit. 8 § 20-3.030(2)(B) (2019). In addition, Missouri

courts have held that the Commission has the discretionary authority to hear fu rther

evidence on its own motion. See Minies v. Meadowbrook Manor, 105 S.W.3d 529,

534 (Mo. App. E.D. 2003), overruled on other grounds by Hampton.

 We find persuasive the dissenting Commissioner’s analysis of the question,

particularly in light of our recent decision in Missouri Department of Transportation

v. Labor & Industrial Relations Commission, 600 S.W.3d 1, 3-4 (Mo. App. W.D.

2020), where we ruled that a Missouri Supreme Court mandate, returning a case to

the Commission to apply the proper legal standard to the employee’s claim, did not

preclude the Commission from receiving additional evidence on remand. There, the

employer argued that a remand “for a proper review of Employee’s claim” did not

contemplate reopening the record and taking additional evidence. Id. at 5. It

bolstered the argument by pointing to the court’s statement that “there was no

evidence presented in this case that Employee’s work-related stress was objectively

‘extraordinary and unusual as statutorily required[’]” under the standard announced

in [the Missouri Supreme Court’s remand opinion].” Id. at 5-6. 9

9
 The posture of the case was the employer’s appeal of a circuit court order quashing its preliminary
writ of prohibition, which sought to stop the Commission from accepting or considering additional
evidence after the Missouri Supreme Court remanded the ma tter for the application of a “now-
clarified” legal standard. Mo. Dep’t of Transp. v. Lab. & Indus. Rel. Comm’n , 600 S.W.3d 1, 2 (Mo.
App. W.D. 2020). We found no error in the circuit court’s decision.

 9
 Such evidence was missing there, as here, because the Missouri courts ’

interpretation of the law took an unforeseen direction, changing Mr. Dubuc ’s burden

of proof after the Commission awarded him benefits. In the dissenting

Commissioner’s view, neither Mr. Dubuc nor the Second Injury Fund “had any notice

that evidence satisfying or rebutting the requirements of § 287.220.3 was necessary in

this case.” Indeed, evidence pertaining to the burden of proof under section

287.220.3 would not have been relevant during the hearing that took place a year

before Cosby v. Treasurer of State-Custodian of Second Injury Fund, 579 S.W.3d 202

(Mo. banc 2019), was decided. Accordingly, reasonable diligence would not have

produced this evidence at the hearing.

 We cannot emphasize enough how significantly Cosby changed the sole

judicial interpretation of section 287.220.3 when the evidentiary hearing was

conducted in this case. Cosby abrogated this Court’s ruling in Gattenby v. Treasurer

of State-Custodian of Second Injury Fund, 516 S.W.3d 859 (Mo. App. W.D. 2017). In

Gattenby, decided before Mr. Dubuc’s hearing, we concluded that section 287.220.3

applies only when all injuries occurred after January 1, 2014. The Missouri Supreme

Court denied the application for transfer in that case. It was not until Cosby that

interpretation flaws in Gattenby were addressed. In the interim, Gattenby was the

only authoritative precedent on the issue. Justice requires that Mr. Dubuc be allowed

to present evidence to satisfy the governing legal standard under Cosby. When the

law changes “on a point that materially affect[s] [the] case” after it is tried and

decided, it would be “improper and unfair” to deny the parties an opportunity to

present evidence relevant to the newly announced legal standard. Tharp. v. St. Luke’s

 10
Surgicenter-Lee’s Summit, LLC, 587 S.W.3d 647, 662 (Mo. banc 2019) (citations

omitted). Simply stated, justice requires that Mr. Dubuc be allowed to present

evidence to satisfy the governing legal standard as clarified after his case was heard

and decided. A claimant “should not be punished for failing to introduce evidence

when [he] did not have the benefit of this Court’s guidance as to the evidence

necessary to make a submissible case.” Id. at 663. Evidence relating to section

287.220.3 was not relevant when Mr. Dubuc’s claim was heard, and he therefore had

no reason to present any such evidence at the hearing.

 Under the circumstances, it is in the interest of justice to permit Mr. Dubuc to

submit additional evidence. 10 This point is granted.

Commission’s Interpretation of “Medically Documented”

 In the second point, Mr. Dubuc claims that the Commission misinterpreted and

misapplied the evidentiary requirements under section 287.220.3 by finding that his

preexisting hernias were not “medically documented”; he further asserts that the

qualifying preexisting disabilities directly and significantly aggravated or accelerated

his primary injury. According to the Commission, expert testimony about and

numerous medical record references to Mr. Dubuc’s hernias and hernia repairs were

inconsistent, indicating that they were the product of self-reported medical history.

In its view, the record therefore lacked “direct evidence” of this possibly qualifying

preexisting disabling condition, and, as such, did not support a Second Injury Fund

10
 This Court discussed the 2020 Dubuc I opinion in Treasurer of State-Custodian of Second Injury
Fund v. Parker, No. WD83030 (Mo. App. W.D. July 14, 2020), which was taken by the Missouri
Supreme Court, vacated, and remanded to the Commission. We distinguished Parker from Dubuc I
by observing that the record in Dubuc I was insufficient for us to address the issues before us. Id.,
slip op. at 14. The supreme court evidently concurred that the record in Parker was sufficient and
thus remanded to the Commission to re -analyze the issues under the correct statutory subsection on
the existing record. See Parker, 622 S.W.3d at 183.

 11
claim under section 287.220.3. Given that the last surgery occurred in the mid -1990s,

it would have been stunning indeed had Mr. Dubuc submitted medical records some

20 years later from the providers who treated his hernias. The law does not require

these providers to maintain medical records beyond seven years from the date of the

last professional service. § 334.097.2, RSMo (2016). We would also observe that

self-reports of the hernias were not the only record evidence of this preexisting

disability. Veterans Administration (VA) records indicated that Mr. Dubuc

complained of groin pain in May 2010 and noted a first surgery for bilateral inguinal

hernia while Mr. Dubuc was in the Navy in the mid-1980s. And a September 2012

CT scan report stated “Ill-defined hypermetabolic soft tissue both inguinal canals is

likely postoperative and related to previous Inguinal hernia repair. ” Another VA

record indicates “abdominal pain in the region of his previous multiple hernia

surgeries,” and a “constant abdominal pain mainly in the lower right region over the

area of his hernia incision. . . .”

 The workers’ compensation statute does not define the term “medically

documented.” “In the absence of any statutory definition, words used in statutes are

to be given their plain and ordinary meaning.” Buttress v. Taylor, 62 S.W.3d 672, 679

(Mo. App. W.D. 2001). “Medical records” are defined as those documents composing

“a medical patient’s healthcare history.” Medical Records, B LACK ’ S L AW

D ICTIONARY (11 th ed. 2019). “Document” is defined as “[s]omething tangible on

which words, symbols, or marks are recorded. . . . Today the term also embraces any

information stored on a computer, electronic memory device, or any other medium. ”

Document, id. Something is medically documented then where information about it

 12
is written on paper or stored electronically and it pertains to a patient’s health care.

The source of the information is of no particular import to the analysis of whether

that information has been medically documented.

 In the context of evidentiary standards, Missouri courts have long permitted

the admission into evidence of self-reports appearing in medical records as an

exception to the hearsay rule based on the rationale, equally applicable here, that self -

reported medical history is reliable. See Breeding v. Dodson Trailer Repair, Inc., 679

S.W.2d 281, 285 (Mo. banc 1984) (citation omitted):

 People generally realize that for a physician to bring his skill to bear he
 must have accurate information on the patient’s condition from the
 patient himself. McCormick, Evidence 2d Ed. (Hornbook Series) Ch. 29,
 Sec. 292. It would logically follow that if the patient can be presumed
 truthful in that circumstance (as to his present complaints and
 symptoms), he can equally reasonably be presumed to be truthful
 concerning that portion of his past medical history necessary for the
 physician to correctly diagnose and treat his present condition. There
 would appear therefore no logical reason to hold that reliability exists as
 to present symptoms and complaints but fails to exist for past medical or
 physical history.

 Because the Commission erred in prohibiting the introduction of additional

evidence, we cannot say whether such evidence would alter its finding as to whether

a medically documented disability met the requirements of section 287.220.3. Thus,

on remand, the Commission will have to reconsider this factual finding on the basis

of the existing record and on whatever additional evidence is submitted.

 As part of this point, Mr. Dubuc also argues that the existing evidence was

sufficient to prove that the Factor V Leiden mutation and chronic anticoagulation,

which, he observes, the Commission accepted as a preexisting disability despite the

absence of documentation from the diagnosing physician, aggravated and accelerated

 13
the primary October 2015 injury. Because we are remanding for the Commission to

take additional evidence, we do not address this matter further as the record evidence

may alter its factual finding as to this preexisting disability.

 Mr. Dubuc further contends that an Eastern District case allows the

Commission to consider other factors, both medical and non-medical, such as skills,

education, training, and age, in determining whether a particular injury is

permanently and totally disabling. Klecka v. Treasurer of Mo.—Custodian of Second

Injury Fund, No. ED108721, 2021 WL 2546417 (Mo. App. E.D. June 22, 2021). He

also argues that the Eastern District court found error in the Commission ’s refusal to

award Second Injury Fund benefits due to the ALJ’s reliance on more than one

preexisting disabling condition and those other factors. The Missouri Supreme Court

has taken transfer in Klecka, so it would be imprudent for us to rely on a case pending

before it where the mandate has been recalled. As well, the Commission did not rely

on this rationale to decide Mr. Dubuc’s claim. We do not issue advisory opinions.

See Chesterfield Spine Ctr., LLC v. Best Buy Co., Inc., 617 S.W.3d 450, 463 (Mo.

App. W.D. 2021). Thus, this point is granted only to the extent that the Commission

misinterpreted “medically documented” when rejecting self-reports about the hernias

in Mr. Dubuc’s medical records as evidence of a qualifying preexisting injury. 11

Commission’s Incidental Reference to Bennett

11
 Addressing the record evidence about the Factor V Leiden Mutation, the Second Injury Fund states,
“Appellant presented no expert testimony that Appellant’ s Factor V Leiden mutation – or any other
preexisting disability of fifty weeks permanent partial disability – aggravated and accelerated the
work-related injury.” This statement underscores our conclusion that the matter must be remanded
for Mr. Dubuc to have the opportunity to question his experts about whether a preexisting disability
of fifty weeks’ permanent partial disability aggravated or accelerated the primary injury, because he
did not have to meet that standard until after the hearing and award.

 14
 In the third and final point, Mr. Dubuc challenges, as a failure to follow this

Court’s instructions on remand and as too narrow an interpretation of section

287.220.3, the Commission’s invocation of Bennett v. Treasurer of State-Custodian of

Second Injury Fund, 607 S.W.3d 251 (Mo. App. E.D. 2020). The Commission cited

the opinion for the principle that expert testimony about all preexisting disabilities

combining with the primary injury to render a claimant PTD is insufficient to prove a

Second Injury Fund claim because the law requires evidence that one qualifying

preexisting disability combined with the disability from the primary work -related

injury to result in PTD. The Commission did not rely on this rationale in deciding

the case; it prefaced its footnote on the matter by stating, “Although not the basis of

this award, . . .” Again, we will not issue an advisory opinion. Also, the Missouri

Supreme Court has made clear in Parker that the Commission must consider all of a

claimant’s qualifying pre-existing disabilities, whether just one is established or

several are. Treasurer of State-Custodian of Second Injury Fund v. Parker, 622

S.W.3d 178, 182 (Mo. banc 2021) (citing section 1.030 for the principle that the

singular form, “preexisting disability,” should be interpreted to include the plural

form). This point is denied.

 Conclusion

 Finding that the Commission erred by misinterpreting our remand instructions

and that the interest of justice will be served by remanding for the Commission to

consider evidence relevant to section 287.220.3 and the factual findings we instructed

the Commission to make, we reverse and remand for proceedings consistent with this

 15
opinion. 12 We also find that the Commission erred by misinterpreting the term

“medically documented” when it ruled out self-reported medical history as direct

evidence of a preexisting disability. We take no position on whether Mr. Dubuc met

his evidentiary burdens under section 287.220.3.

 Janet Sutton, Judge

Ahuja, P.J. and Ardini, J. concur.

12
 In their briefing and argument, the parties expressed some confusion about whether, under this
Court’s Dubuc I remand, Mr. Dubuc was limited to the claim that his preexisting disabilities “ directly
and significantly aggravate[d] or accelerate[d]” his primary injury under section
287.220.3(2)(a)a(iii). This Court’s prior remand essentially required the Commission to determine
whether Mr. Dubuc’s preexisting medical conditions satisfied the thresholds contained in section
287.220.3(2)(a)a—a determination the Commission did not make based on its initial application of
section 287.220.2 to Mr. Dubuc’s claim against the Second Injury Fund. Our prior opinion should
not be read to limit the manner in which Mr. Dubuc may seek to satisfy section 287.220.3(2)(a)a
(e.g., by presenting evidence that any of his preexisting disability arose out of military - or work-
related injuries).

 16