Judgment rendered May 10, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,017-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CHESAPEAKE OPERATING,                    Plaintiff-Appellee
L.L.C.

versus

COLUMBINE II LIMITED                     Defendants-Appellants
PARTNERSHIP; ATLANTIC
RICHFIELD COMPANY and BP
AMERICA PRODUCTION
COMPANY

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 77873

Honorable Amy Burford McCartney, Judge

* * * * *

BLANCHARD, WALKER, O'QUIN          Counsel for Appellants,
& ROBERTS                          BP America Production
By: William Michael Adams          Company and Atlantic
    William Timothy Allen          Richfield Company
    Stacey Denise Williams
    Timothy T. Wynn


BRADLEY, MURCHISON, KELLY,         Counsel for Appellees,
& SHEA, LLC                        Columbine II Limited
By: Joshua S. Chevallier          Partnership and CMP
    Stephen C. Fortson             Viva LP, Intervenor
    Malcolm S. Murchison

BREAZEALE, SACHSE & WILSON, LLP
By: Thomas M. Benjamin
Alan H. Goodman

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
By: Sarah K. Casey
Kenneth M. Klemm, T.A.

Counsel for Appellee,
Chesapeake Operating,
LLC

* * * * *

Before STONE, COX, and STEPHENS, JJ.

**STONE, J.**

This civil appeal arises from the 42nd Judicial District Court, the Honorable Amy B. McCartney, presiding. Atlantic Richfield Company and BP America Production Company[1] (collectively, "BP/ARCO") appeal the summary judgment granted in favor of the appellees, Columbine II Limited Partnership and CMP Viva, LP[2] (collectively, "Columbine") and the denial of its partial MSJ. The trial court found that the interests conveyed in the sale by and between BP/ARCO and Columbine do not contain any limitation as to a zone, unit, formation, or depth; and that Columbine is entitled to all disputed overriding interests attributable to production from all zones, formations, and depths. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

It is undisputed that thirty years ago ARCO sold to Columbine overriding royalties. Effective July of 1992, BP/ARCO conveyed to Columbine numerous assignments of overriding royalties and other non-cost bearing interests throughout the United States. BP/ARCO conveyed to Columbine all various interests. Also undisputed is that the royalty payor, Chesapeake Operating, L.L.C. ("Chesapeake"),[3] originally paid the royalties to Columbine for the following four properties at issue located in the Haynesville formation: (1) Andress R T ORR, (2) Johnson S E Unit A 1 ORR, (3) Johnson Talbert Unit ORR, and (4) Talbert Heir Unit No 1 ORR until BP/ARCO asserted that they were entitled to the royalty interests.

---

[1] BP is ARCO's successor in interest.

[2] CMP intervened in this case because it acquired all of Columbine's rights, title, and interest in the royalties in dispute effective October 1, 2021, with Columbine retaining the royalties accruing prior to that time.

[3] Chesapeake is not a party to the current appeal.

On October 31, 2016, Chesapeake, as the operator of the wells, filed a petition in concursus. On September 8, 2017, Chesapeake filed an amended and restated petition in concursus requesting the court to determine whether BP/ARCO or Columbine is entitled to the overriding royalty interests related to the production of minerals underlying Sections 9, 12, 16, and 22 Township 14 North, Range 16 West and Section 15, Township 14 North, Range 15 West in DeSoto and Caddo Parishes, Louisiana. The "Granting and Habendum Clauses" of the Assignment provided, in pertinent part:

> [ARCO] hereby transfers, grants, bargains, sells, conveys, and assigns to [Columbine], and the successors and assigns of [Columbine] all of [ARCO]'s right, title, and interest in and to the following:
>
> (a) [ARCO]'s right, title, and interest in and to or derived under… (iii) each overriding royalty interest, net profit interest or other non-cost bearing interest either granted to or reserved by or in favor of [ARCO] or its predecessor(s) in title in any assignment or conveyance in which [ARCO] or its predecessor(s) in title is either the assignor or assignee and which covers property as described in Exhibit A hereto, or any part thereof or any interest therein; and (iv) without limitation of the foregoing each royalty interest, overriding royalty interest, net profit interest or other non-cost bearing interest which has been unitized, communitized or pooled under unit, communitization, pooling or similar agreements, or under orders of state regulatory agencies, and which unitized, communitized or pool interest covers property as described in Exhibit A hereto, or any part thereof, or any interest therein, INSOFAR AND ONLY INSOFAR AS (but without limitation of the provisions of subsection (iv), above) each Royalty Interest covers or relates to the lands and other property described in Exhibit A under the heading "Description of Lands [.]"
>
> (b) All of [ARCO]'s rights, titles, and interests in and to all units, pooled acreage, proration or spacing units, or other allocation of acreage established by, or in accordance with applicable state, federal, tribal, or local law, to the extent and solely to the extent that such rights, titles, and interests relate to the interests described in Subsection (a) above;

Attached to the Assignment was a document entitled "Exhibit A," which specifically described the interests conveyed to Columbine under the field name Bethany Longstreet as follows:

| Property Name | Description of Lands |
|---|---|
| Andress R T ORR | All of Section 12-T14N-R16W, containing 640 acres, more or less, and being more particularly described in Dept. of Conservation Order No. 289 dated 9-16-54. Recorded in the parish records. ARCO interest derived from Assignment dated 7-16-54 from Southern Production Co. to Ralph R. Gilster, et al. recorded in Vol. 725, Pg. 269 of the Conveyance Book. |
| Johnson S E Unit A 1 ORR | The S E Johnson Unit A-1, being the South ¾ of the E/2 and the South ¾ of the E/2 W/2 of Section 15; East ¾ N/2 of Section 22-T14N-R16W, Caddo and Desoto Parishes, Louisiana containing 605.376 acres, as pooled by Dept. of Conservation Order No. 289 dated 9-16-54. ARCO interest reserved in Assignment dated 7-16-54 from Southern Production Co. to Ralph R. Gilster, et al. recorded in Vol. 725, Pg. 269 of the Conveyance Book. |
| Johnson Talbert Unit ORR | S/2 SE/4 of Section 9; SW/4 SW/4 of Section 10; W/2 W/2 of Section 15; E/2 of Section 16, All in T14N-R16W, containing 599.58 acres, more or less, being further described in a Dept. of Conservation, State of LA, Order No. 289 dated 9-16-54 covering the Johnson Talbert Unit No. 1. ARCO interest reserved in Assignment dated 7-16-54 from Southern Production Co. to Ralph R. Gilster, et al. recorded in Vol. 725, Pg. 269 of the Conveyance Book |
| Talbert Heirs Unit No 1 ORR | W/2 SW/4 of Section 3; SE/4 of Section 4; North ¾ of the E/2 of Section 9; North ¾ of the W/2 W/2 of Section 10; All in the T14N-R16W, containing 602.72 acres, as pooled under the Dept. of Conservation Order No. 289, (as amended) dated 9-16-54. ARCO interest reserved in Assignment dated 7-16-54 from Southern Production Co. to Ralph R. Gilster, et al. recorded in Vol. 725, Pg. 269 of the Conveyance Book. |

Both parties filed several answers and restated petitions. Chesapeake deposited the funds into the registry of the court in DeSoto Parish. BP/ARCO and Columbine filed cross motions for summary judgment

3

relating to the language in the property descriptions and whether the described interests were limited to the Pettit and Hosston formations only. On May 5, 2022, the trial court held a hearing on both motions for summary judgment. The trial court granted Columbine's MSJ and denied BP/ARCO's partial MSJ. BP/ARCO now appeals.

## DISCUSSION

BP/ARCO contends that the district court erred in its interpretation of the contractual description of the lands associated with the disputed royalty interests. BP/ARCO argues that the property descriptions' interests are limited by clauses indicating that the lands are more particularly described elsewhere in the contract, namely, Office of Conservation Order No. 289 ("Order No. 289"), which states:

> [T]he unitized Pettitt formation is described as "that formation occurring in the Jones-O'Brien, Inc., and Ralph R. Gilster-Pace No. 1 Well in Section 7, Township 14 North, Range 16 West… at a depth from 6134 feet to 6192 feet."
> [T]he unitized Hosston formation is described as "that formation encountered in the Jack Grigsby – Johns No. 1–A Well in Section 7, Township 14 North, Range 16 West . . . the top of which is at 6445 feet." It further states that the "stray zone encountered in the Hosston formation shall be… construed to mean that zone productive from 6515 feet to 6744 feet in the Jack Grisby- Johns No. 1-A Well in Section 7, Township 14 North, Range 16 West.

BP/ARCO further contends that Order No. 289 specifically states that the Johnson Talbert Unit ORR "cover(s) the Johnson Talbert Unit No. 1." BP/ARCO argues that this language is unambiguous and makes it clear that it conveyed to Columbine the interest in the Pettit and Hosston formations only, and not the Haynesville formation. According to BP/ARCO, each subject description specifically describes the lands and then limits the

4

interests to formations described in Order No. 289. BP/ARCO asserts the order specifically defines the *pooled formations* as the Pettit and Hosston formations. BP/ARCO asserts that the language stating "more particularly described," "further described," or "pooled" in Order No. 289 is the limiting language, and that the descriptions do not have to contain the terms: "limited to," or "insofar," and "only insofar" to limit the interest to only the Pettit and Hosston formations. BP/ARCO further asserts that those rules do not apply because this is not a reservation or exception.

Columbine argues that the conveyance of the disputed royalties is ambiguous as delineated in the property descriptions. According to Columbine, the descriptions included the Haynesville formation and were not on their face, limited only to an interest in the Pettitt and Hosston formations. Columbine further asserts that the description of the four properties contains no clear or express limitations to a unitized formation or depth or any reservation or exception in favor of BP/ARCO. Also, Columbine contends that if BP/ARCO wanted to limit the conveyance to only a particular unitized formation, it could have done so as it did in the assignments for other properties with a Habendum clause. Columbine invokes the principle that any exception or reservation from a conveyance must be clear and express to be effective and that conveyance cannot be by implication. Further, Columbine asserts that the references to Order No. 289 merely identify the survey plat and help with the description of lands covered by the properties at issue and are not a limitation to only an interest in a unitized formation.

Pursuant to the forum selection provision in the contract, Texas law applies to this matter. *See Goodrich Petroleum Co., LLC v. Columbine II,*

5

*Ltd. P'ship*, 53,820 (La. App. 2 Cir. 4/14/21), 318 So. 3d 1062, *writ denied*, 21-00680 (La. 9/27/21), 324 So. 2d 103. This Court shall apply Texas law pursuant to the terms of the contract.

We review a trial court's decision granting summary judgment *de novo. Posse Energy, Ltd. v. Parsley Energy, LP,* 62 S.W.3d 677 (Tex. App. 2021), *review denied* (Feb. 18, 2022). To prevail on a traditional motion for summary judgment, the movant must show there are no genuine issues of material fact and that movant is entitled to judgment as a matter of law. Tex. R. Civ.P. 166a*; Posse Energy, Ltd, supra.* After the movant satisfies his burden, the burden shifts to the nonmovant to provide evidence which raises a genuine issue of material fact and thus avoid summary judgment. *Id.*; *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3D 507 (Tex. 2014). When cross-motions for summary judgment are filed, a court of appeal considers each motion and renders the judgment the trial court should have reached. *Posse Energy, Ltd, supra; Coastal Liquids Transp., L.P. v. Harris Cnty. Appraisal Dist.,* 46 S.W. 3d 880 (Tex. 2001).

Contracts are also reviewed under a *de novo* standard of review. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W. 3d 471 (Tex. 2019). A contract may be either ambiguous or unambiguous, and this determination is a question of law for the court. *Hausser v. Cuellar*, 345 S.W. 3d 462 (Tex. App. 2011). In construing a written contract, our primary concern is to determine the true intent of the parties as expressed by the plain language of the agreement. *N. Shore Energy, L.L.C. v. Harkins,* 501 S.W. 3d 598 (Tex. 2016). We construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served, and avoiding unreasonable constructions when possible and proper.

*Id*.; *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.,* 473 S.W. 3d 296 (Tex. 2015). To achieve this objective, courts must examine and consider the entire writing in an effort to harmonize and give effects to all the provisions of the contract so that none will be rendered meaningless. *Posse Energy, Ltd, supra*; *J.M. Davidson, Inc. v. Webster*, 128 S.W. 3d 223 (Tex. 2003). No single provision taken alone is given controlling effect; rather, each must be considered in the context of the instrument as a whole. *Plains Expl., supra; J.M. Davidson, Inc., supra.* Additionally, words are given their plain, common, or generally accepted meaning unless the contract shows that the parties used words in a technical or different sense. *Plains Expl., supra.*

A deed is unambiguous when it is so worded that it can be given a certain or definite legal meaning or interpretation. *Coker v. Coker*, 650 S.W. 2d 391 (Tex. 1983). A contract is not ambiguous if the contract's language can be given a certain or definite meaning. *N. Shore Energy, supra*. But if the contract contains two or more reasonable interpretations, the contract is ambiguous, creating a fact issue as to the parties' intent. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.,* 590 S.W. 3d 471 (Tex. 2019). An ambiguity, however, does not arise "merely because parties to an agreement proffer different interpretations of a term." *DeWitt Cnty. Elec. Co-op., Inc. v. Parks,* 1 S.W. 3d 96 (Tex. 1999). For an ambiguity to exist, both interpretations must be reasonable. *Columbia Gas Transmission Corp v. New Ulm Gas, Ltd.*, 940 S.W. 2d 587 (Tex. 1996).

While extrinsic evidence of the parties' intent is not admissible to create an ambiguity, the contract may be read in light of the circumstances surrounding its execution to determine whether an ambiguity exists. *Plains*

7

*Expl.*, *supra*. Consideration of the surrounding facts and circumstances is simply an aid in the construction of the contract's language and has its limits. *Id.* The rule that extrinsic evidence is not admissible to create an ambiguity "obtains even to the extent of prohibiting proof of circumstances surrounding the transaction when the instrument involved, by its terms, plainly and clearly discloses the intention of the parties, or is so worded that it is not fairly susceptible of more than one legal meaning or construction." *Sun Oil Co. v. Madeley*, 626 S.W. 2d 726, 732 (Tex. 1981) (quoting *Lewis v. E. Tex. Fin. Co.*, 136 Tex. 149, 146 S.W. 2d 977, 980 (1941)). Mere disagreement over the interpretation of an agreement does not necessarily render the contract ambiguous. *Plains Expl.*, *supra.* An ambiguous contract is strictly construed against the drafter. *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W. 2d 734 (Tex. 1990); *Liberty Surplus Ins. Corp. v. Exxon Mobil Corp.*, 483 S.W. 3d 96 (Tex. App. 2015).

In the matter *sub judice*, BP/ARCO argues that the contractual language clearly conveyed the interests in the Pettit and Hosston formations and not the Haynesville formation. In opposition, Columbine asserts that the descriptions of the lands for the four properties contain neither clear or express limitations to a unitized formation, depth, or any reservation, nor an exception in favor of BP/ARCO.

Upon examination of the four corners of the contract and the reasonable interpretations of both parties, the contract is ambiguous. Furthermore, since BP/ARCO was the drafter of the contract, any ambiguity in the contract would be scrutinized and strictly construed against BP/ARCO. Our *de novo* review of the documents reveal that the contract did not contain any limitation to a zone, unit, formation, or depth. Even

though Order No. 289 limits the unit to the Pettit and Hosston formations, referencing the order does not limit the property descriptions to those formations only. Consequently, the trial court did not err in finding Columbine is entitled to all overriding royalty attributable to production from all zones, formations, and depths for the disputed royalty interests.

Accordingly, we find there is no genuine issue of material fact and the trial court was correct in granting summary judgment in favor of Columbine and denying the motion for partial summary judgment against BP/ARCO.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed. The cost of this appeal is assessed to appellants, Atlantic Richfield Company and BP America Production Company.

**AFFIRMED**.